[No. A048056. First Dist., Div. Two. June 11, 1991.]

MARY V. WILDENSTEN, Plaintiff and Appellant, v.
EAST BAY REGIONAL PARK DISTRICT, Defendant and Respondent.

**COUNSEL**

Curran & Alschuler and Donald W. Curran for Plaintiff and Appellant.

Wendel, Rosen, Black, Dean & Levitan, Les A. Hausrath and Deidre E. Taber for Defendant and Respondent.

**OPINION**

**BENSON, J.**—Plaintiff Mary V. Wildensten appeals from the judgment entered after the trial court sustained a demurrer to her first amended complaint without leave to amend. The trial court ruled that Wildensten failed to state a cause of action for inverse condemnation. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The relevant allegations of Wildensten's first amended complaint are as follows: "3. That at all relevant times, plaintiff was and is the owner of real property on Rifle Range Road, Contra Costa County. Plaintiff's property is

bordered on the northeast by lands of Wildcat Canyon Regional Park managed and owned by the defendant East Bay Regional Park as an improvement within the meaning of said term as defined in section 38002 of the Government Code of the State of California.

"4.   That immediately below plaintiff's real property on a steep slope within Wildcat Canyon Regional Park is a coalescing complex of active and dormant landslide deposits described by geotechnicians employed by the defendant District as earth slumps and earth flows, or complex slump earth flows; and in addition, a very large landslide encompassing all of the smaller active and dormant features, and extending from the ridge crest approximately 2,000 [feet] downslope has been tentatively identified by the aforesaid geotechnicians.

"5.   That said geotechnicians have reported to the governing board of the District that naturally-occurring earth slump and earth flow landslides are widespread within the Orinda formation which is the geological formation within Wildcat Canyon Regional Park. . . . Many landslide [sic] were initiated or reactivated along the north-facing slope of Wildcat Canyon in response to the severe winter storms of 1981-82 and 1982-83.

"6.   That the aforesaid technicians employed by said District have identified the presence of two relatively well-defined landslide scarps that encroach into the eastern margin of plaintiff's real property; that one said scarp incorporates the northeast corner of the plaintiff's property and the second is located in the vicinity of the southeastern corner of plaintiff's property and is characterized by a two to three foot high near vertical face; that these features, according to the aforesaid geotechnicians employed by the District, reflect headward migration, or retrogressive upslope failure, of the landslide complex idenfitied [sic] immediately below plaintiff's property and accordingly the mechanism of retrogressive failure potentially incorporates a large portion, if not all, of plaintiff's property.

"7.   That the aforesaid described conditions upon the said defendant District's real property obstruct the free use of plaintiff's property so as to interfere with an [sic] obstruct its use and development in violation of plaintiff's constitutionally protected right to own and use real property as guaranteed under Article I, Section 1, of the Constitution of the State of California.

"8.   That accordingly plaintiff's real property has been taken and damaged within the meaning of Article I, Section 19, of the Constitution of the State of California without compensation. . . .

"10. That plaintiff requested the governing board of the defendant District that it undertake works of improvement upon its property so as to prevent headward migration of the identified landslide on its property which its geotechnical engineers have advised potentially will incorporate a large portion if not all of plaintiff's property, or to trade land owned by the District without such a threat for hers.

"11. That the governing body of the defendant District determined that since it had undertaken no work or development on its property, and it had no intention of doing so, any corrective works would therefore not be cost effective and therefore the burden of the loss of use is to be borne by plaintiff.

"12. That the deliberate act of the governing board of the defendant District has in effect resulted in the District taking plaintiff's property without compensation within the meaning of the Fifth Amendment of the Constitution of the United States and that by reason of the District's refusal to stabilize conditions on its property plaintiff's property has no value and accordingly she should be compensated in the sum of $100,000."[1]

Defendant East Bay Regional Park District (the District) demurred to the first amended complaint (as it had successfully demurred to the original complaint) on the ground it failed to state a cause of action for inverse condemnation. Wildensten acknowledged she had pled all relevant facts in the first amended complaint. After hearing the matter, the trial court sustained the demurrer without leave to amend. The action was then ordered dismissed, judgment was entered for the District, and Wildensten filed a timely notice of appeal.

### DISCUSSION

The issue before us is whether a governmental entity's mere ownership of undeveloped land and refusal to stabilize part of the land which threatens an adjacent landowner's property with landslide supports a claim for inverse condemnation. We hold it does not.

To state a cause of action for inverse condemnation, the plaintiff must allege the defendant substantially participated in the planning, approval, construction, or operation of a public project or improvement which

---

[1] In her opening brief, Wildensten also states that "the District has doubly enhanced its assets by the inclusion of Mary Wildensten's property in its 'open space' program along with providing public access across her property. . . ." However, these facts were not pleaded in the first amended complaint and will not therefore be considered in our review of the demurrer.

proximately caused injury to plaintiff's property. (*Holtz* v. *Superior Court* (1970) 3 Cal.3d 296, 302-304 [90 Cal.Rptr. 345, 475 P.2d 441]; *Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 263-264 [42 Cal.Rptr. 89, 398 P.2d 129]; *Ullery* v. *County of Contra Costa* (1988) 202 Cal.App.3d 562, 568 [248 Cal.Rptr. 727]; *Souza* v. *Silver Development Co.* (1985) 164 Cal.App.3d 165, 170 [210 Cal.Rptr. 146]; see Landslide and Subsidence Liability (Cont.Ed.Bar 1974) § 8.3, p. 166; Condemnation Practice in Cal. (Cont.Ed.Bar Supp. 1990) § 13.3, pp. 241-242.)[2]

Wildensten's first amended complaint makes the legal conclusion that the District's ownership of the land alone constitutes an "improvement." ██ Although in reviewing the sufficiency of a complaint against a general demurrer we treat the demurrer as admitting " 'all material facts properly pleaded,' " we do not treat as true such conclusions of law. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

██ Notably, Wildensten offers no authority holding that a governmental entity's mere ownership of raw land which threatens adjoining private property with landslide amounts to "substantial participation" in a public project or improvement. We have found no cases directly addressing the novel theory urged by Wildensten. To the contrary, relevant case law confirms that mere ownership of undeveloped land, without more, cannot form the basis for an inverse condemnation claim.

In all inverse condemnation cases involving land subsidence to adjacent property, liability has resulted from affirmative actions the entity undertook to further some public project. (See, e.g., *Holtz* v. *Superior Court, supra,* 3 Cal.3d at p. 299 [entity extensively excavated under city street to build BART system, resulting in adjacent land subsidence]; *Albers* v. *County of Los Angeles, supra,* 62 Cal.2d at pp. 254-255 [landslide caused by county's road building]; *Reardon* v. *San Francisco* (1885) 66 Cal. 492, 493-494 [6 P. 317] [city's construction of sewer line and street grading caused plaintiff's land to settle]; *City of Mill Valley* v. *Transamerica Ins. Co.* (1979) 98 Cal.App.3d 595, 600 [159 Cal.Rptr. 635] [landslide caused by discharge of surface waters from city's drainage system]; *Blau* v. *City of Los Angeles* (1973) 32 Cal.App.3d 77, 80 [107 Cal.Rptr. 727] [city's excavation and brush removal for construction of public road caused landslide]; *Reinking* v. *County of Orange* (1970) 9 Cal.App.3d 1024, 1027-1028 [88 Cal.Rptr. 695] [land subsidence caused by county's operation of public refuse dump]; *Sheffet* v. *County of Los Angeles* (1970) 3 Cal.App.3d 720, 735 [84 Cal.Rptr.

[2]Wildensten does not allege facts indicating liability for inverse condemnation based on theories of regulatory taking (see *First Lutheran Church* v. *County of Los Angeles* (1987) 482 U.S. 304 [96 L.Ed.2d 250, 107 S.Ct. 2378]) or unreasonable precondemnation activity (see *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345]).

11] [county's approval of subdivision maps and plans for drainage system constituted substantial participation incident to serving a public purpose]; *Los Angeles County Flood Control Dist.* v. *Southern Cal. Bldg. & Loan Assn.* (1961) 188 Cal.App.2d 850, 851-853 [10 Cal.Rptr. 811] [entity's excavation for storm drain damaged adjacent property]; *Veterans' Welfare Bd.* v. *City of Oakland* (1946) 74 Cal.App.2d 818, 820 [169 P.2d 1000] [entity's excavation for tunnel caused land subsidence].)

Here, Wildensten does not, and cannot, allege the District undertook any action amounting to substantial participation in the planning, approval, construction, or operation of a public project or improvement. Wildensten suggests the District's ownership of Wildcat Canyon Regional Park is itself an "improvement" as defined in Government Code section 38002. Although that section defines improvement to include public parks, it defines improvement only "[a]s used in [that] chapter," which is the "Park and Playground Act of 1909." Since Wildensten seeks no relief under that particular chapter of the Government Code, section 38002 is irrelevant to defining the type of activity required to support a cause of action for inverse condemnation. Moreover, the expressly limited definition of "improvement" in Government Code section 38002 cannot reasonably be interpreted as overruling the numerous cases, discussed above, holding that inverse condemnation liability must be based on affirmative action to further a public project which causes injury to the plaintiff's property.

All the District has done is purchase undeveloped land containing natural landslides and left it undeveloped. It did not undertake any project to improve the land, such as grading or other excavations, which exacerbated the landslide conditions and thus caused harm to Wildensten's adjacent property. The District's mere ownership and "management" of this undeveloped property could not be the proximate cause of any physical injury to Wildensten's property. Such passive ownership of raw land cannot logically be considered a governmental taking.

Wildensten also argues the District's refusal to take steps to prevent landslides is conduct which supports her cause of action. We are aware of no duty on the part of the District to correct all naturally occurring landslide conditions on its property that threaten adjoining property. Wildensten implies the District had such a duty based on *Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358 [178 Cal.Rptr. 783, 636 P.2d 1121] (private possessor of land is no longer immunized from liability for harm caused to persons outside his premises by the natural condition of his land). *Sprecher*, however, is distinguishable since it dealt solely with a private landowner's tort liability for injuries caused by natural conditions on his property. Wildensten simply

ignores Government Code section 831.25, which makes public agencies immune for tort damages to adjacent private property resulting from land failure if the failure was caused by a natural condition of unimproved public property, as here. The District's refusal to voluntarily assume a duty to correct natural conditions on its unimproved property cannot possibly be considered substantial participation in a public project or improvement.

Wildensten also relies on Public Resources Code section 5500 et seq. for the proposition that because the District has the power to acquire lands to keep them open for public use, it thus engages in "conscious and deliberate governmental act[s]" supporting liability for inverse condemnation. However, Public Resources Code section 5500 states merely that " 'District,' as used in this article, means any regional park district, regional park and open-space district, or regional open-space district formed pursuant to this article." Public Resources Code section 5502, also referred to by Wildensten, simply authorizes cities to organize and incorporate. These sections do not delineate the District's powers, much less define "improvements" or "conscious and deliberate acts" for inverse condemnation purposes.

Wildensten offers no compelling reason we should depart from long-established principles of inverse condemnation law to expand the scope of liability as she requests. Alleging no affirmative actions by the District to further a public project which proximately caused injury to her property, Wildensten thus failed to state a cause of action for inverse condemnation. Since Wildensten concedes she has no additional facts to allege, the trial court properly sustained the District's demurrer without leave to amend.

DISPOSITION

The judgment is affirmed.

Kline, P. J., and Smith, J., concurred.