Filed 8/14/14

*CERTIFIED FOR PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| CITY OF PASADENA, | B254800 |
| Petitioner, | (Los Angeles County Super. Ct. No. BC491467) |
| v. | |
| SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, | |
| Respondent; | |
| MERCURY CASUALTY COMPANY, | |
| Real Party in Interest. | |


ORIGINAL PROCEEDINGS in mandate. Joseph R. Kalin, Judge. Petition is denied.

Richards, Watson & Gershon, Robert C. Ceccon and Saskia T. Asamura; Michelle Beal Bagneris, City Attorney, and Lesley Cheung, Deputy City Attorney for Petitioner, City of Pasadena.

No appearance for Respondent.

Law Offices of Robert A. Stutman and Timothy E. Cary for Real Party in Interest.

During a windstorm in late November 2011, a tree owned by the City of Pasadena (City) fell on the residence of James O'Halloran. As a result of the damage caused to the house, the insurer Mercury Casualty Company (Mercury) paid benefits to O'Halloran pursuant to his homeowner's insurance policy. Mercury then sued the City for inverse condemnation and nuisance based on the damages caused by the tree.

The City now seeks a writ of mandate challenging the trial court's order denying summary adjudication with respect to these causes of action. The City argues that summary adjudication should have been granted because (1) the subject tree was not a work of public improvement such that the City may be held liable for inverse condemnation, and (2) Mercury failed to submit any evidence that the City was negligent such that the City may be held liable for nuisance. We disagree and deny the writ.

### FACTUAL AND PROCEDURAL BACKGROUND

More than 5,000 trees in the City were damaged by the windstorm that struck the City on November 30, 2011, including the tree that fell on O'Halloran's residence. The residence experienced extensive damage for which Mercury paid $293,000 in benefits to O'Halloran.

On September 4, 2012, apparently after being assigned O'Halloran's claims against the City, Mercury filed suit against the City for inverse condemnation and private nuisance alleging that the City was liable for the damages to O'Halloran's house

2

because it owned the subject tree.[1]  On October 25, 2013, the City moved for summary adjudication of each cause of action on the grounds that (1) "a tree is not a work of public improvement that is the proper subject of an inverse condemnation action," and (2) the tree at issue was not a nuisance because "there [wa]s no evidence that the City negligently maintained the tree."

With respect to the inverse condemnation cause of action, the City's separate statement provided that on November 30, 2011, a tree owned by the City fell on the residence of Mercury's insured.  In a supporting declaration by the City's arborist, the arborist stated that:  (1) he managed the maintenance of 60,000 street trees including the subject tree; (2) the City catalogued these trees in a database; and (3) "[t]he City strives to enhance the quality of life through the promotion, protection, and balanced management of . . . trees."  In Mercury's opposition, it did not dispute any of these facts or provide additional evidence.

The City's separate statement also set forth the following facts in support of summary adjudication of the nuisance cause of action:  (1) on November 30, 2011, hurricane-force winds struck the City; (2) more than 5,500 City trees were damaged by the windstorm and over 2,000 "uprooted or destroyed"; (3) the subject tree fell onto the O'Halloran residence that day; (4) the tree was owned by the City; and (5) the City had pruned the tree in 2005 and 2010.  Mercury only disputed the City's statement regarding the speed of the winds during the windstorm.

---

[1]    Mercury also alleged a cause of action for "dangerous condition o[f] public property" but later dismissed this claim.

3

On February 13, 2014, the trial court denied the City's motion on the following grounds: (1) with respect to the inverse condemnation cause of action, "the evidence shows that the subject tree is part of a work of public improvement that may properly be the subject of an inverse condemnation action," and (2) with respect to the nuisance cause of action, "negligence is not required to establish nuisance" and the City did not "submit[] evidence excluding the probability that the public improvement was a substantial factor in causing the damage."[2] The City sought review of the court's order by way of a petition for writ of mandate, and we set an order to show cause.

## *CONTENTIONS*

The City contends that the trial court should have granted summary adjudication of the inverse condemnation and nuisance causes of action because (1) the subject tree was not a work of public improvement, and (2) Mercury failed to submit any evidence that the City was negligent such that it can be held liable for nuisance.

## *DISCUSSION*

1. *Applicable Law*

" 'Summary adjudication of a cause of action is appropriate only if there is no triable issue of material fact as to that cause of action and the moving party is entitled to judgment on the cause of action as a matter of law. [Citation.]' " (*Burch v. Superior Court* (2014) 223 Cal.App.4th 1411, 1416.) A defendant moving for summary

---

[2] Mercury also filed a motion for summary adjudication of the inverse condemnation cause of action on the grounds that the subject tree was part of "the urban forest of Pasadena" which is a work of public improvement, and the tree was a "substantial contributing factor in the damage to the O'Halloran Residenc[e]." The court's order denying that motion is not a subject of this writ.

4

judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2).) "To satisfy this burden, the defendant must present evidence which either conclusively negates an element of the plaintiff's cause of action, or which shows the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Namikas v. Miller* (2014) 225 Cal.App.4th 1574, 1581.) If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2).)

We review an order granting or denying summary adjudication de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) In our review, we "liberally constru[e] the evidence in support of the party opposing summary judgment and resolv[e] doubts concerning the evidence in favor of that party. [Citation.]" (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

2. *The Trial Court Properly Denied Summary Adjudication As to the Inverse Condemnation Cause of Action Because There Were Triable Issues of Material Fact as to Whether the Tree Was Part of a Work of Public Improvement*

Inverse condemnation claims arise under Article I, section 19 of the California Constitution, which provides that "[p]rivate property may be taken or damaged for a public use and only when just compensation . . . has first been paid to . . . the owner." (Cal. Const. art. I, § 19; see *Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 516 (*Regency Outdoor Advertising*).) "[R]ead as a whole, the 'just compensation' clause is concerned, most directly, with the state's exercise of its

5

traditional eminent domain power . . . . [¶] The California Constitution of 1879 added the phrase 'or damaged' to the just compensation provision . . . to clarify that application of the just compensation provision is not limited to physical invasions of property taken for 'public use' in eminent domain, but also encompasses special and direct damage to adjacent property resulting from the construction of public improvements." (*Customer Co. v. City of Sacramento* (1995) 10 Cal.4th 368, 376-380) "To state a cause of action for inverse condemnation, the plaintiff must allege the defendant substantially participated in the planning, approval, construction, or operation of a public project or improvement which proximately caused injury to plaintiff's property. [Citations]" (*Wildensten v. East Bay Regional Park Dist.* (1991) 231 Cal.App.3d. 976, 979-980 (*Wildensten*).)

The sole issue here is whether the City's public tree, as part of the City's forestry program, constitutes a public improvement such that it could provide the basis for an inverse condemnation claim. "The construction of [a] public improvement is a deliberate action of the state or its agency in furtherance of public purposes." (*Clement v. State Reclamation Board* (1950) 35 Cal.2d 628, 641.) "[N]umerous [] California cases have stated or assumed from time immemorial that when physical injury is the incidental consequence of *deliberate government action* in *furtherance of public purposes,* the damaged or destroyed property *has* been appropriated for 'public use,' and the public *has* effectively exercised its entitlement to 'use and enjoyment' of the property with compensation. [Citations.]" (*Customer Co. v. City of Sacramento, supra,* 10 Cal.4th at p. 415, fn. 7 [emphasis added].) Accordingly, a public

6

improvement for the purposes of an inverse condemnation claim involves (1) a deliberate action by the state (2) taken in furtherance of public purposes.

There is no "deliberate governmental action" when the purported public improvement is neither an "instrumentalit[y] of the state nor . . . controlled by the state." (*Moerman v. State of California* (1993) 17 Cal.App.4th 452, 459.) In *Moerman,* the plaintiff relied on the theory of inverse condemnation when he sued the state for damages caused by elk the state had relocated near his property. (*Id.* at p. 456.) The court held that the plaintiff's "attempt to analogize tule elk to a public improvement is misguided," as there could be no inverse condemnation where there was an "absence of control" by the state over the instrumentality that caused the damages. (*Id.* at p. 458.)

There is also no deliberate action by the state when a governmental entity "mere[ly] own[s] [] undeveloped land and [has] refus[ed] to stabilize part of the land." (*Wildensten, supra,* 231 Cal.App.3d at p. 979.) In *Wildensten,* the plaintiff sought to recover for damages caused to her property by a landslide on adjacent property owned by the government. (*Id*. at pp. 978-979.) The court held that "a governmental entity's mere ownership of raw land" does not "amount[] to 'substantial participation' in a public project or improvement," and therefore, the plaintiff had failed to state a cause of action for inverse condemnation. (*Id.* at p. 980.)

As to the second element, whether the deliberate governmental action was taken in furtherance of a public purpose,  the California Supreme Court has found that the planting of trees to beautify public streets benefits the public and serves the public purpose of improving public roads. (*Regency Outdoor Advertising, supra*, 39 Cal.4th at

7

pp. 521-523.) In *Regency Outdoor Advertising,* the Court examined whether a governmental entity was liable for inverse condemnation based on its planting of palm trees "as part of [a] highway beautification project," and found that " '[i]f [a] street is improved so as to be more useful, or ornamented so as to be more beautiful, the public is benefited generally . . . . ' [Citation.]" (*Id*. at pp. 515, 522.) The court further noted that "[t]he planting of trees along a road is, in general, fully 'consistent with [the road's] use as an open public street' [citation], and in fact may enhance both travel and commerce along the street." (*Id.* at p. 522.) "[[T]he government] may plant shade trees along the road to give comfort to motorists and incidentally to improve the appearance of the highway. By so doing [the government] aims to make a better highway than a mere scar across the land would be. . . . [Citations.]" (*Id.* at p. 521.) In its analysis, the court assumed that the subject trees were part of a public improvement, but held that the defendant was not liable for inverse condemnation as no damages had been shown. (*Id.* at p. 523.)

As demonstrated in *Regency Outdoor Advertising*, if the instrumentality that allegedly caused the plaintiff's damages (such as a tree) is part of the construction of a public improvement (such as a highway beautification plan), the public improvement element of an inverse condemnation claim is satisfied. (See *Holtz v. Superior Court* (1970) 3 Cal.3d 296, 304-306 [the plaintiffs adequately stated an inverse condemnation claim based on damages from excavation connected with the construction of the defendant's "rapid transit system"]; *Albers v. County of Los Angeles* (1965) 62 Cal.2d

8

250, 255 [liability for inverse condemnation found where the plaintiff's damages were caused by the placement of dirt in connection with the construction of a road].)

Here, the evidence presented by the City in support of its motion for summary adjudication did not demonstrate that there was no triable issue of fact as to whether the subject tree was a part of a public improvement. The City's separate statement stated only that, on November 30, 2011, a tree owned by the City fell on the residence of Mercury's insured. In the supporting declaration by the City's arborist, the arborist said that he managed the maintenance of 60,000 street trees including the subject tree, that the City catalogued these trees in a database, that he "headed an urban tree maintenance program," and that "[t]he City strives to enhance the quality of life through the promotion, protection, and balanced management of . . . trees."

This evidence showed that the subject tree was a street tree that was part of a City program to enhance its residents' and visitors' quality of life through the maintenance of trees in the City. It showed that the City took deliberate actions to manage the program by cataloging its trees and maintaining them through regular pruning. In addition, as in *Regency Outdoor Advertising,* the tree here was part of a government program to maintain trees along roads and, thus, served the public purpose of improving public roads. This evidence was sufficient to demonstrate a triable issue of fact as to whether the tree, as part of the forestry program, constituted a public improvement.

The City argues to the contrary that the subject tree is not part of a public improvement because trees are not "deliberately designed and constructed," quoting

9

*Albers v. County of Los Angeles, supra,* 62 Cal.2d 250, 263. The *Albers* court held that "any actual physical injury to real property *proximately caused* by the improvement *as* deliberately designed and constructed is compensable under article I, section [19], of our Constitution whether foreseeable or not." (*Id.* at pp. 263-264 [emphasis added].) In this quote, the *Albers* court set forth the test for proximate causation in an inverse condemnation claim: damages must be caused by a public improvement *as* deliberately designed and constructed. Here, the City has chosen not to appeal the trial court's ruling with respect to causation for this cause of action, and only challenges whether the tree is part of a work of public improvement. Therefore, the *Albers* proximate cause test is not relevant to our review.

Since there was evidence demonstrating that the City's forestry program, of which the subject tree is a part, is the result of (1) a deliberate governmental action (2) serving a public purpose, summary adjudication of the inverse condemnation cause of action was properly denied.

3. *The City Failed to Meet Its Burden on Summary Adjudication of Establishing That Mercury Could Not Show Nuisance*

A nuisance is "[a]nything which is injurious to health . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." (Civil Code, § 3479.) Nuisance liability is not necessarily based on negligence, thus, "one may be liable for a nuisance even in the absence of negligence. [Citations.]" (*Lussier v. San Lorenzo Valley Water Dist.* (1988) 206 Cal.App.3d 92, 103-104 (*Lussier*); see also *Calder v. City Etc. of*

10

*San Francisco* (1942) 50 Cal.App.2d 837, 839 [" ' "a nuisance and liability for injuries occasioned thereby may exist without negligence" ' "].)  However, " 'where liability for the nuisance is predicated on the omission of the owner of the premises to abate it, rather than on his having created it, then negligence is said to be involved.' [Citations.]" (*Lussier,* 206 Cal.App.3d at p. 105.)

The City contends that the trial court erred in (1) finding that "negligence is not required to establish nuisance," and (2) "disregard[ing] the lack of any dispute of material fact and lack of evidence supporting any wrongdoing by the City with respect to the subject tree."  The City is correct that Mercury must show negligence to prevail on its nuisance cause of action.

Here, the complaint alleged a cause of action for nuisance based on the City's alleged failure to "prevent and/or stop the collapse" of the subject tree.[3]  Therefore, pursuant to the Complaint's allegations, the City's liability for nuisance is predicated on the City's failure to abate the nuisance and "negligence is said to be involved." (*Lussier,* 206 Cal.App.3d at p. 105.)  However, although the City argues that Mercury failed to raise a triable issue of fact as to the City's negligence, this presumes that the City had met its initial burden on summary adjudication of establishing that Mercury could not show negligence.

As the party moving for summary adjudication, the City had the initial burden to present evidence showing that Mercury could not establish an element of its nuisance

---

[3]      In Mercury's discovery responses, it claims that the City should have "performed appropriate maintenance" on the tree prior to the windstorm.

11

cause of action. The City argued that Mercury could not establish a nuisance claim based on negligence because there was no evidence the City had negligently maintained the subject tree as the City had pruned the tree twice in the seven years before the windstorm. In support of this argument, the City presented the following facts in its separate statement: that hurricane-force winds struck the City on November 30, 2011, that more than 5,500 City trees were damaged by the windstorm and over 2,000 "uprooted or destroyed," that the tree owned by the City fell onto the O'Halloran residence that day, and that the City had pruned the tree in 2005 and 2010.

However, the City did not present evidence as to what kind of maintenance it was required to perform on the tree to prevent damage to O'Halloran's property. Liability for negligence is based on a defendant's breach of its duty of care to the plaintiff, and damages caused by that breach. (*Regents of University of California v. Superior Court* (2010) 183 Cal.App.4th 755, 764.) For the City to meet its burden of showing that it had *not* been negligent, it was required to present some evidence that it had not breached its duty of care. That the City pruned the tree in 2005 and 2010 may potentially show that the City fulfilled its duty of care, however, to reach this conclusion, the City must first present some evidence establishing the nature and extent of its duty of care. As the City failed to do so, it did not meet its burden of showing it had fulfilled its duty of care with respect to O'Halloran's property.[4] Accordingly, the

---

[4]     The City did present other evidence in support of its motion that was not incorporated into its separate statement. However, " '[t]his is the Golden Rule of Summary Adjudication: if it is not set forth in the separate statement, *it does not exist*.' " (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 337,

12

burden never shifted to Mercury to raise a triable issue of fact as to whether the City had

been negligent in its maintenance of the tree.[5]

---

superceded by statute on another ground.)  Moreover, even if we considered the additional evidence outside of the City's separate statement, there was still no evidence demonstrating what the City's duty of care was with respect to this tree.

[5]     The City also argues on appeal that the trial court erroneously found that Mercury had raised a triable issue of material fact as to whether, between November 30 and December 1, 2011, "hurricane force winds of between 80 mph and 100 mph struck the City of Pasadena."  As the City failed to meet its burden as the moving party, we need not reach this issue.

### DISPOSITION

The petition is denied.  Mercury shall recover its costs in connection with the writ.

### CERTIFIED FOR PUBLICATION

CROSKEY, Acting P. J.

WE CONCUR:

KITCHING, J.

ALDRICH, J.