Filed 1/14/16  San Bernardino County Flood Control Dist. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| SAN BERNARDINO COUNTY FLOOD CONTROL DISTRICT,<br><br>　　　　Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,<br><br>　　　　Respondent;<br><br>PAUL RUSSAVAGE et al.,<br><br>　　　　Real Parties in Interest. | E063282<br><br>(Super.Ct.No. CIVVS1204822)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Donald R. Alvarez, Judge.  Petition is granted.

Graves & King, Harvey W. Wimer III and Dennis J. Mahoney, for Petitioner.

No appearance for Respondent.

1

Hubbard Law Firm, David F. Hubbard and Mordecai Eli Underwood, for Real Parties in Interest.

Petitioner San Bernardino County Flood Control District (District) seeks writ review of an order denying its motion for summary judgment in an action for inverse condemnation brought by real parties in interest Paul and Sandra Russavage (Russavage).[1] We find that District adequately established its lack of liability and that Russavage failed to raise a triable issue of fact. Accordingly, we grant the petition.

STATEMENT OF FACTS

The complaint alleges that Russavage owns property which was damaged by floodwaters from the Mojave River. District's liability is based upon allegations that it "was entrusted with the authority and responsibility for flood maintenance and flood control of the Mojave River . . . control over the drainage system," but it unreasonably "plac[ed] concrete, dirt and brick . . . in the area of the South Bryman Road bridge" which caused an obstruction and dammed up the natural flow. The complaint also alleges that District failed to keep the channel free of obstruction or to ensure that the channel was adequate to handle the flow during December 2010.[2]

District moved for summary judgment on the grounds that no public improvement caused or contributed to the claimed damage and that District does not own or control

[1] Plaintiffs sue as trustees of the Russavage Revocable Living Trust.

[2] The complaint also includes a cause of action for declaratory relief with respect to District's obligations concerning the bridge.

2

either the South Bryman bridge or the Silverwood Dam upriver. In pertinent part its evidence established the following.

District does not own or maintain any flood control or drainage improvements adjacent to or upstream of the Russavage property. In the area of the flooding, the Mojave is in a natural condition, and the river flow shifts in response to sediment, erosion, and riparian plant growth.

From the "early 1980's" through the time of the subject flooding, District did no maintenance along the river, such as dredging or removing vegetation. District does not own, control, or maintain the South Bryman bridge, which was constructed and is owned by a private individual. During all relevant times, District did not deposit concrete, dirt, or brick anywhere near the bridge.

District's expert, hydraulic engineer Martin Teal, further declared that by computer modeling he determined that the obstruction to the bridge did not affect the water levels at the point of the Russavage property, and that for these factors to have impacted that property, the bridge would have had to span the entire river and be 30 feet tall. Notably, however, there was *no* evidence as to the actual height or expanse of the bridge.

Russavage's opposition in fact served to fill in some of the gaps. First, Paul Russavage declared that he had seen the water backed up at the bridge all the way to his own property. (He also noted that the bridge was "7 feet tall and 600 feet long.")

3

We should note that District does not dispute that the bridge was in some way obstructed to decrease maximum flow of the river; hence, the evidence to that effect need not be discussed.

Other evidence submitted by Russavage—we do not rule on its admissibility, as it is not crucial to our decision—tended to suggest that District's reasons for no longer "maintaining" the riverbed had at least in part to do with environmental restrictions. Russavage also introduced evidence which tended to show that District was aware of the flooding risk posed by the dumping of concrete or other debris near the bridge, and had attempted to persuade the property owner to remedy the situation. A letter apparently written on District's behalf referred to a "permit issued to you on December 30, 1987, to construct a private bridge crossing the District's Mojave River at Bryman Road."

The trial court's written order reflects that it apparently felt that District carried its initial burden, but that Russavage had raised material triable issues of fact with respect to control over the bridge and whether the obstruction of the bridge in fact caused water to back up as far as plaintiffs' property.[3] Even if the trial court was correct in this regard, it does not defeat District's right to summary judgment.

_____

**3** The order repeatedly uses the word "seems," as in "This letter seems sufficient to dispute UF 13" and "it does not seem sufficient by itself to defeat the motion." The order also states at one point that "District has presented undisputed facts to show that it does not own or control the bridge" but then finds that "[i]t also seems that Mr. Russavage's declaration that . . . he saw the water from the bridge flood his property is sufficient to show the existence of a triable issue of material fact." This usage is inappropriate. Either evidence is sufficient to establish something, or it is not.

4

DISCUSSION

The critical point to remember is that plaintiffs' complaint seeks recovery for inverse condemnation, *not* damages caused by a dangerous condition of public property. The difference is far from academic, because claims for inverse condemnation damages do *not* need to be preceded by compliance with the California Government Claims Act. (Gov. Code, § 905.1.)  Indeed, Russavage expressly alleges in the complaint that "Inverse condemnation claims are exempt from the Government Claims Act," an allegation which we believe concedes that no claim was filed.

A claim for damages in inverse condemnation is, as the name makes clear, a variant of eminent domain which is used when the public entity does not offer compensation for a taking of private property.  (*Customer Co. v. City of Sacramento* (1995) 10 Cal.4th 368, 377.)  But mere damage to private property does not give rise to an action in eminent domain.  Compensation is due only when there is either an actual taking of private property for a public use, or when the private property suffers damage due to the construction of a public improvement.  (*Id.* at pp. 378-380; *City of Pasadena v. Superior Court* (2014) 228 Cal.App.4th 1228, 1233.)  The reasoning is the same for both inverse condemnation and the requirement for just compensation for an actual taking—the costs of a public improvement benefitting the entire community should be spread among those benefitted (the taxpayers) rather than borne by a single member of the community.  (The owner of damaged property.)  *(Pacific Bell v. City of San Diego*

(2000) 81 Cal.App.4th 596, 602, citing *Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 558.)

Plaintiffs' problem in this case is that the bridge is not a public improvement. All the record suggests is that a permit was issued to one Robert T. Older allowing it to be built.[4] Even if District retained some right to control the manner in which the bridge was maintained, that would not make the bridge itself a "public improvement." Nothing in the record indicates that the public had a right to use the bridge or otherwise benefitted from its construction; indeed, the permit letter proffered by Russavage expressly refers to it as a "private bridge."

It is quite true that a public entity may have legal liability for damages attributable to property which it controls but does not own. (Gov. Code, § 830,[5] subd. (c); *Low v. City of Sacramento* (1970) 7 Cal.App.3d 826, 829-830.) But even assuming that District's possible ability to insist that the bridge be maintained according to its standards constituted "control" (but see *Public Utilities Com. v. Superior Court* (2010) 181

---

[4] District did not present any evidence about the permit, but Russavage did so; we assume the documentation was obtained in discovery from District, although the opposition does not explain this. The trial court sustained District's objection on the basis of relevance and lack of authentication. We refer to the exhibit not because it *was* admissible, but simply to put plaintiffs' case in the strongest light so that we can more effectively dispose of plaintiffs' arguments.

[5] All future statutory references are to the Government Code unless otherwise stated.

Cal.App.4th 364, 373-375 and cases cited [analyzing regulatory control in the context of § 830]), that does not aid Russavage.

Any such liability would be for a dangerous condition of public property under section 830. That is not the claim Russavage brought, and we have noted above that Russavage appears to implicitly concede that no claim was filed under section 900 et seq. Hence, District's level of control over the bridge is irrelevant to this lawsuit.[6]

Perhaps (again implicitly) acknowledging this, Russavage also argues that the river channel itself constituted a public improvement and that District's "abandonment" of its maintenance duties and the allegedly resulting flooding justifies liability in inverse condemnation.[7] Russavage relies on *Arreola v. County of Monterey* (2002) 99 Cal.App.4th 722 (*Arreola*), but that case is readily distinguishable.

---

[6] Russavage cites several cases imposing inverse condemnation liability with respect to construction done by others. However, in these cases the public entity defendant in some manner took on the responsibility for the improvement. (E.g.*, Heimann v. Los Angeles* ( 1947) 30 Cal.2d 746, 756-757, overruled on other grounds in *County of Los Angeles v. Faus* (1957) 48 Cal.2d 672 [work done by contractor]; *Souza v. Silver Dev. Co.* (1985) 164 Cal.App.3d 165, 168 [drain system built by tract developer and accepted into city storm system]; *Sheffet v. County of Los Angeles* (1970) 3 Cal.App.3d 720, 733 [city accepted streets in a subdivision which caused flooding due to inadequate drainage].) Furthermore in all of these cases there was a public improvement. The private bridge was not such an improvement.

[7] These alleged obligations arose out of an agreement with the United States Army Corps of Engineers at the time the upstream dam was constructed in 1969 or the early 1970's. Apparently District at that time agreed to maintain the flood channel to accommodate 23,500 cubic square feet. This agreement is not in the record, but is referenced in an updated "Floodplain Maintenance Plan" dated 1997. We are given only a few pages of this plan by Russavage, and once again we do not determine its admissibility or rely on it other than to explain why Russavage cannot recover.

It is true that some of the facts in *Arreola* closely track those in this case. There, as here, the plaintiffs alleged that the defendant public entities had breached an obligation to keep the bed of the Pajaro River cleared of brush, vegetation, and other obstructions, causing flood damage to plaintiffs' properties. (*Arreola, supra,* 99 Cal.App.4th at pp. 733-735.) There, as apparently in this case,[8] the defendants had undertaken to keep the riverbed clear as a condition to the work performed by the Army Corps of Engineers for flood control purposes. (*Id*. at p. 732.) The holding of *Arreola* is that negligent *maintenance* of a public improvement can be the basis for liability in inverse condemnation. (*Id*. at pp. 743-744.)

The crucial distinction is that in *Arreola*, there was no issue as to the existence of a public improvement: the Corps of Engineers had constructed a levee along the banks of the river for the purpose of protecting the public, and the defendants' failure to clear the riverbed caused this levee to fail, resulting in damage to the property of the plaintiffs. (*Arreola, supra,* 99 Cal.App.4th at p. 736.) Here, the only public improvement was the dam miles upstream. It did not fail. Taking the bridge out of the equation (which we have already done), Russavage's property was damaged by natural floodwaters in a natural channel.

---

[8] Again, due to the lack of admissible evidence, we must use "apparently."

It may be true[9] that District had at one time made efforts to clear the natural channel of natural vegetation and other deposits. The reasons why it ceased to do so remain speculative on this record. However, the District's failure to clear the channel only meant that it reverted to a natural condition.

There was no public improvement which could lead to liability in inverse condemnation. Hence, we conclude that the District was entitled to summary judgment.

DISPOSITION

The petition for writ of mandate is granted. Let a peremptory writ of mandate issue, directing the Superior Court of San Bernardino County to vacate its order denying District's motion for summary judgment, and to enter a new order granting the motion.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties. Petitioner to recover its costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:


HOLLENHORST
J.


KING
J.

---

[9] As we have noted, the evidence in this case was not well developed on several potentially critical factual issues.