Filed 7/30/24  Meyer v. Dept. of Water Resources CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| LIAM MEYER, | C097929 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2020-00288266-CU-MC-GDS) |
| v. | |
| DEPARTMENT OF WATER RESOURCES, | |
| Defendant and Respondent. | |

In 2019, plaintiff Liam Meyer purchased property overlooking the Sacramento River, knowing it had soil erosion issues along the riverbank.  When he failed to take the proper steps to cure the erosion issues, the Central Valley Flood Protection Board (the Board) initiated enforcement procedures and obtained a judgment against him.  Meyer then filed a suit against the Board and the Department of Water Resources (DWR), challenging the validity of the enforcement action and judgment.  Contending the property was damaged in 2017 after the Oroville Dam failed and released a massive amount of water into the river, Meyer sought writ relief from the enforcement action and

1

alleged additional claims including inverse condemnation. The superior court sustained DWR's demurrer without leave to amend and denied Meyer's motion for summary judgment. We affirm.

## FACTUAL AND LEGAL BACKGROUND

In reviewing a judgment entered following the sustaining of a demurrer, we take the factual background from the allegations in the petition and any attached exhibits. (*Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 665.)

In mid-February 2017, the failure of the Oroville Dam spillway resulted in the sudden release of a large volume of water into the Sacramento River (hereafter the 2017 high water event). As a result, the riverbank located at the subject property in Sacramento (the Property) experienced massive damage. Peggy Yee owned the Property at the time of this event.

In May 2017, MBK Engineers sent a letter on behalf of Yee to the Board requesting emergency authorization to conduct repairs at the Property because "[c]lose to twenty feet of the[] property fell into the adjacent Sacramento River," the "condition of the waterside berm is unstable and exposed to continued erosion," and "[t]he home is within fifteen feet of the active erosion." MBK Engineers sent a subsequent letter on July 21, 2017, also on behalf of Yee, to the Board and the United States Army Corps of Engineers requesting public assistance to repair the Property.[1] On January 8, 2018, Reclamation District 1000 informed Yee the Property did not qualify for assistance.

On March 6, 2018, the Board issued Yee a notice of violation (NOV) regarding several violations existing on the Property.

---

[1] Assistance was sought under section 5 of the Flood Control Act of 1941 (33 U.S.C. § 701n).

On May 28, 2019, Meyer began discussions to purchase the Property and was provided a copy of the NOV on July 16, 2019. Meyer was informed that if he purchased the property, he would have to comply with the corrective actions in the NOV. Meyer purchased the Property in September 2019.[2]

On October 7, 2019, Meyer submitted to the Board a stabilization plan to address the NOV. On October 11, 2019, the Board informed Meyer the stabilization plan did not comply with the corrective actions stated in the NOV, as it did not include the required design documents prepared by a California licensed civil engineer, nor a project schedule, and failed to address other violations noted in the NOV.

On October 22, 2019, the Board issued Meyer a cease and desist order, which was upheld following a hearing on November 22, 2019. On February 28, 2020, the Board issued enforcement order No. 2020-01 against Meyer for not remedying the violations as directed in the NOV and assessed civil penalties. The Board stayed the findings in the order to allow additional time to comply with the cease and desist order. If Meyer did not comply with the required corrective actions, the enforcement order would become effective on May 28, 2020. In August 2020, the Board obtained a civil judgment against Meyer in an amount totaling $106,000.

Meyer filed the instant complaint on November 2, 2020.[3] Subsequently, Meyer amended the complaint and filed a second amended complaint (in pro. per.), alleging

---

[2]     We grant DWR's request to take judicial notice of the deed to the property. We also note that Meyer alleges he bought the property in 2019 and, under the applicable standard of review, we assume properly pleaded material allegations are true. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300.)

[3]     Meyer filed his first lawsuit in February 2020, under case No. 34-2020-00276397. According to DWR in its demurrer, this was voluntarily dismissed on May 6, 2020. Meyer then filed the instant suit on November 2, 2020. This case was removed to federal court in December that year. The parties stipulated to dismiss the claims against the United States Army Corps of Engineers and remand the case back to state court.

3

various causes of action against both the Board and DWR.[4]  The causes of action included:  (1) request to stay enforcement of the Board's judgment under Code of Civil Procedure section 1094.5, subdivision (g);[5] (2) request to remand the matter to an appropriate forum under section 1094.5; (3) request for a writ of mandate under section 1085 ordering DWR and the Board to cease their unlawful interpretation of the Water Code and continued enforcement action against Meyer; (4) request for a writ of prohibition under sections 1102 and 1103 ordering DWR and the Board to cease their unlawful action by assessing penalties in excess of the statutory limit; (5) request for an alternative writ under sections 1087 and 1104 and order to show cause why the matter should not be stayed; (6) request for injunctive relief to restrain DWR and the Board from enforcing related actions against Meyer;[6] (7) claiming all actions by DWR and the Board exceed statutory authority in the Water Code; (8) inverse condemnation; and (9) a denial of due process by failing to provide a fair hearing and that he is required to comply with "infeasible" demands.

Meyer moved for summary judgment, which was denied.

---

Contrary to Meyer's claim, the case was remanded back under the same case number as assigned upon filing.  Although Meyer was given an opportunity to file a third amended complaint, he failed to do so in a timely manner.

[4]  Handwriting on the second amended complaint lists "Does 1-100," but there is no indication of the identity of these purported Doe defendants.

[5]  Undesignated statutory references are to the Code of Civil Procedure.

[6]  The superior court found that "[i]njunctive relief is a remedy, not a cause of action" and sustained the demurrer without leave to amend.  Meyer does not challenge this ruling on appeal, other than to generally claim that DWR should be ordered to stop the state-created ongoing damage to him.  Meyer's failure to adequately develop his argument, waives the claim of error. (*People v. Johnson & Johnson* (2022) 77 Cal.App.5th 295, 324.)

4

DWR demurred to the second amended complaint arguing, inter alia, that Meyer's attempt to obtain writ relief was time-barred and that DWR was not the appropriate party to sue because the Board was the agency involved in the actions that Meyer challenges in this lawsuit (i.e., actions regarding violations, enforcement, and judgment). The superior court issued its tentative ruling on January 19, 2023, sustaining DWR's demurrer to the second amended complaint without leave to amend.[7] The court affirmed the tentative ruling at the hearing on January 20, 2023.

Meyer filed a notice of appeal. On October 18, 2023, we granted the Board's motion to dismiss the appeal as against them, pursuant to *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 698.

## DISCUSSION

Meyer alleges the trial court erred in granting DWR's demurrer and denying his motion for summary judgment. He contends that the state was responsible for the damage to the Property sustained during the 2017 high water event and must be held liable; he as the landowner cannot be held responsible for damage he did not cause, and the enforcement action and judgment for his failure to correct the damage should be set aside. He further asserts that because DWR is the agency responsible for maintaining levees and other water-related infrastructure, his suit naming DWR as a responsible agency of the state was properly brought as an inverse condemnation claim.

Section 904.1, which lists appealable judgments and orders, does not include orders denying a motion for summary judgment. Instead, the well-known, long-established rule is that " 'An order denying a motion for summary judgment is not appealable.' " (*Longobardo v. Avco Corp.* (2023) 93 Cal.App.5th 429, 432, quoting

---

[7] The superior court's order separately granted the Board's demurrer.

5

*Gloster v. Sonic Automotive, Inc.* (2014) 226 Cal.App.4th 438, 445.) We thus limit our discussion to whether the trial court properly granted DWR's demurrer.

## I

### *Standard of Review*

Our task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action. (*People ex rel. Lungren v. Superior Court, supra*, 14 Cal.4th at p. 300; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) We assume the truth of allegations in the complaint that have been properly pleaded and give the complaint a reasonable interpretation by reading it as a whole and with all its parts in their context. (*Lungren*, at p. 300.) However, the assumption of truth does not apply to contentions, deductions, or conclusions of law or fact. (*Id.* at pp. 300-301; *Moore*, at p. 125.) Furthermore, any allegations that are contrary to the law or to a fact of which judicial notice may be taken will be treated as a nullity. (*Interinsurance Exchange v. Narula* (1995) 33 Cal.App.4th 1140, 1143; *Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955.) The Supreme Court has held: "On appeal from a judgment of dismissal entered after a demurrer has been sustained without leave to amend, unless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory. [Citations.] If there is a reasonable possibility that the defect in a complaint can be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend. [Citation.] The burden is on the plaintiff; however, to demonstrate the manner in which the complaint might be amended." (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742; see also *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)

## II

### *Challenges to the Enforcement Process*

In his second amended complaint, Meyer requested various types of writ relief based on the NOV, cease and desist order, subsequent hearing on the violation leading to

the enforcement order, and judgment entered against him. Meyer also contended that DWR exceeded its statutory authority in assessing penalties against him and deprived him of due process during the hearing. DWR maintains it had nothing to do with the enforcement process leading to the judgment against Meyer regarding the violation and, even if Meyer could obtain relief against DWR, his requests for writ relief are untimely. We agree with DWR.

**A. Overview**

Under the California Water Code, the Board has the authority to issue NOVs for encroachments into rivers and boundaries. (Wat. Code, §§ 8532, 8701.) When a party fails to respond to a notice of violation, the Board has the authority to issue a cease and desist order. (Wat. Code, § 8701.2.) When a person has failed to correct a violation as outlined in a cease and desist order, the Board must hold an enforcement hearing to consider the issuance of an enforcement order. (Wat. Code, § 8701.4.) If the Board issues an enforcement order against a person, that person may seek judicial review pursuant to Water Code section 8579, which provides that such review shall be by writ of mandate in accordance with Code of Civil Procedure section 1094.5, within 30 days after the decision or action becomes final. (Wat. Code, §§ 8701.4, subd. (e), 8579.)

In addition, upon an enforcement hearing and issuance of an enforcement order pursuant to Water Code section 8701.4, the Board may impose administrative penalties. (Wat. Code, § 8704.1, subd. (a).) Then, "[a]fter the time for judicial review pursuant to [Water Code s]ection 8579 has passed, the board may apply to the clerk of the appropriate court in the county in which the administrative penalties were imposed for a judgment to collect the penalties assessed." (Wat. Code, § 8704.1, subd. (e).) The statutory provisions regarding the Board's remedies also provide that the "remedies provided by this article are not exclusive of, but shall be concurrent with and in addition to, any other remedy, penalty, or sanction that may exist by law, civil or criminal. . . . The

action or proceeding may be commenced and maintained by the board in the name of the state." (Wat. Code, § 8704.4.)

## B. Analysis

### 1. Writ relief sought under section 1094.5 was untimely.

Pursuant to the statutory scheme described above, the relevant date for calculating the timeliness of writ relief under section 1094.5 was February 28, 2020, the date the enforcement order was adopted by the Board, thus making the Board's decision final. Meyer then had until March 29, 2020, to seek judicial review of that order. But Meyer did not initiate the instant suit until November 2020, which is over seven months beyond the statutory deadline.

We note, as did the superior court, that even if we construed the final date of the enforcement order to be May 28, 2020—the effective date of the enforcement order if Meyer failed to comply—Meyer still did not initiate judicial review within 30 days as required by Water Code section 8579. As a result, Meyer's challenges to the validity of the enforcement order through Code of Civil Procedure section 1094.5 are time-barred.

Meyer alleges the time limits in Water Code section 8579 do not apply because this case is governed by *Knick v. Township of Scott* (2019) 588 U.S. 180. That case involved a federal claim that the township violated the takings clause of the Fifth Amendment when it required the Knick family to open their "backyard" cemetery to the public during the day. (*Knick*, at pp. 185-186.) The *Knick* case focused on the availability of a federal remedy without first litigating the issue in state court. (*Id*. at p. 206.) Here, in contrast, Meyer sought writ relief, which is subject to state statutory requirements. Thus, we conclude *Knick* is not applicable here.[8]

---

[8] Nor does *Knick* apply to Meyer's inverse condemnation claim because, as we explain below, that claim was subject to a statute of limitations which was not met in the instant case and was not a point of dispute in *Knick*.

*2. DWR played no role in the enforcement process.*

The named agency in a request for writ relief must be the agency responsible for the obligation, the performance or nonperformance of which review is sought. (See *People v. Picklesimer* (2010) 48 Cal.4th 330, 340 [there is no ministerial duty where there is no "obligation to perform a specific act in a manner prescribed by law whenever a given state of facts exists"].) In the first and second causes of action, Meyer sought an administrative mandate under section 1094.5, challenging DWR's and the Board's actions during the hearing on the cease and desist order that took place in November 2019. In his third cause of action, he sought a writ of mandate under section 1085, arguing that DWR and the Board violated their ministerial duty to issue a violation to the true responsible party and in seeking administrative penalties over $50,000, as limited by statute. In his fourth cause of action, Meyer sought a writ of prohibition under section 1102. In his fifth cause of action, Meyer sought an alternative writ under sections 1087 and 1104. As explained below, each of these statutes require that the entity against whom writ relief is sought was responsible for an administrative duty impacting the petitioner.

For example, administrative mandamus under section 1094.5 is appropriate to inquire "into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given . . . and discretion in the determination of facts is vested in the inferior tribunal . . . ." (§ 1094.5, subd. (a); see *Langsam v. City of Sausalito* (1987) 190 Cal.App.3d 871, 879 ["It is well established that the intent of the Legislature in enacting 1094.5 was to authorize '. . . judicial review only of the exercise by an administrative agency of an adjudicatory or quasi-judicial function' "].) By comparison, a writ of mandate under section 1085 is available where the respondent has a clear, present, and usually ministerial duty to perform; and the petitioner has a clear, present, and beneficial right to performance. (*Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 618.) Similarly, the "writ of prohibition is an appropriate remedy to arrest the proceedings of a court [or other inferior tribunal]"

9

when certain conditions are met. (*City & County of S.F. v. Superior Court* (1959) 53 Cal.2d 236, 243; §§ 1102, 1103.) An alternative writ under section 1087 commands the party to whom it is directed (the respondent) either to do the act required to be performed or show cause before the court why the respondent has not done so, whereas an alternative writ of prohibition commands the relevant party to desist from further proceedings and to show cause why such party should not be absolutely restrained from further action. (§§ 1087, 1104.)[9] Accordingly, we conclude that Meyer's effort to obtain writ relief against DWR for the allegedly improper enforcement process is misplaced because DWR was not the responsible agency.

Meyer argues against this conclusion, alleging that because the state, and DWR in particular, have a ministerial duty to maintain the Oroville Dam and the flood control system, the failure of the dam leading to the 2017 high water event places the blame for the soil erosion squarely at *their* feet and any attempt to hold him responsible for those damages is subject to judicial intervention. In support, defendant cites to *Paterno v. State of California* (2003) 113 Cal.App.4th 998.

Prior to *Paterno*, it was established that "[a] public entity is a proper defendant in an action for inverse condemnation if the entity substantially participated in the planning, approval, construction, or operation of a public project or improvement that proximately caused injury to private property. (*Wildensten v. East Bay Regional Park Dist.* (1991) 231 Cal.App.3d 976, 979-980.) So long as the plaintiffs can show substantial participation, it is immaterial 'which sovereign holds title or has the responsibility for operation of the project.' (*Stoney Creek Orchards v. State of California* (1970) 12 Cal.App.3d 903, 907.)" (*Arreola v. County of Monterey* (2002) 99 Cal.App.4th 722,

---

[9] Section 1087 specifies the form of alternative writs of mandate, whereas section 1104 specifies the form of alternative writs of prohibition. (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1245, fn. 6.)

761.)  In *Paterno* the court further explained, "When a public entity accepts responsibility for an improvement, it becomes that entity's public improvement regardless of who built it." (*Paterno v. State of California, supra*, 113 Cal.App.4th at p. 1029.)

These legal principles may have bearing on whom might be a proper defendant in Meyer's inverse condemnation suit.  However, for purposes of the discrete issue before us, i.e., whether Meyer can pursue writ relief against DWR for actions taken by another agency, *Paterno* does not serve his needs.  Even if, as Meyer argues, *Paterno* provides support for the proposition that the state was liable for the damage incurred by the 2017 high water event, *Paterno* does not provide for the ability to pursue writ relief challenging subsequent enforcement actions initiated by a different agency.

Here, it is undisputed that the agency involved in the notice of violation, cease and desist and enforcement orders and, ultimately, the judgment against Meyer was the Board.  There are no allegations that DWR, specifically, played any role in those events.  Indeed, the statutory scheme described above assigned the enforcement responsibilities to the Board and specifically states that enforcement actions "may be commenced and maintained by the board in the name of the state."  (Wat. Code, § 8704.4.)  Thus, the statutory obligation to conduct enforcement procedures belongs to the Board.  Meyer cannot factually establish that DWR made an administrative decision impacting Meyer or otherwise had a legal obligation or ministerial duty to him subject to judicial review through the writ process.  Thus, Meyer fails to state a cause of action against DWR with respect to causes one through five.

For similar reasons, we conclude that the demurrer was properly sustained as to Meyer's seventh and ninth causes of action.  In his seventh cause of action, Meyer alleges that DWR and the Board exceeded their statutory authority under Water Code section 8700 et seq. by assessing a fine in excess of the amount statutorily authorized.  In the ninth cause of action, Meyer alleges that DWR failed to provide a fair and adequate hearing and denied Meyer his good faith efforts to restore his property.  The Board, not

11

DWR, issued the assessment against Meyer. Meyer has not stated any basis for holding DWR responsible for the Board's actions.

We further conclude that Meyer has not identified any reasonable possibility the defects in these causes of action can be cured by amendment.

III

*Inverse Condemnation*

In the eighth cause of action, Meyers alleged that DWR, responsible for maintaining the Oroville Dam and nearby levees, is liable for the damage caused by the 2017 high water event, which has resulted in "specifically preventing the best use of the land" and constitutes a compensable taking under the theory of inverse condemnation. He also alleged that the subsequent judgment lien entered against him constitutes a compensable taking. DWR contends that Meyer had no interest in the Property when it was damaged, and thus has no right to recover in inverse condemnation. DWR also contends that even if he could recover under that theory, he filed the instant lawsuit after the expiration of the statute of limitations. We agree with DWR.

An inverse condemnation cause of action derives from article I, section 19 of the California Constitution, which provides private property may not be "taken or damaged for a public use" without just compensation. (Cal. Const., art. I, § 19, subd. (a).) "To state a cause of action for inverse condemnation, the property owner must show there was an invasion or appropriation (a 'taking' or 'damaging') of some valuable property right which the property owner possesses by a public entity and the invasion or appropriation directly and specially affected the property owner to his injury." (*Beaty v. Imperial Irrigation Dist.* (1986) 186 Cal.App.3d 897, 903.) To be constitutionally entitled to compensation, the plaintiff must only show that he or she owned a property interest that had been taken by the state. (*County of San Diego v. Miller* (1975) 13 Cal.3d 684, 687.) Here, Meyer has not alleged that he had an interest in the Property at the time it was damaged. For this reason, he cannot show he can cure this defect by amendment. As a

12

result, even if DWR could be held liable for the damage sustained from the 2017 high water event as Meyer alleges pursuant to *Paterno*, Meyer has not stated a cause of action regarding his entitlement to compensation.

To the extent Meyer claims that the enforcement action and judgment against him constitutes a different form of inverse condemnation, he has failed to support this claim with coherent, reasoned argument and thus forfeits it. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error"]; *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 [an appellant forfeits an issue when he or she makes only a blanket, conclusory statement, with no citation to authority or discussion of the authority as it applies to the facts of the case]; *Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007 [an appellant must make coherent argument in appellate briefs and failure to do so forfeits the issue on appeal].)

Moreover, a claim of inverse condemnation is subject to a three-year statute of limitations under section 338, subdivision (j), which covers actions "to recover for physical damage to private property under Section 19 of Article I of the California Constitution." (See *Lyles v. State of California* (2007) 153 Cal.App.4th 281, 285.) Even if Meyer had a right to recovery under a theory of inverse condemnation, he had three years from the mid-February 2017 high water event to file a cause of action. He did not file suit until November 2020, nearly nine months after the expiration date of the statute of limitations.

To the extent that Meyer argues a previous lawsuit effectively rendered the enforcement order void or tolled the statute of limitations for the inverse condemnation claim, we disagree. Meyers claims he filed a previous lawsuit, assigned case No. 34-2020-00276397, the day before the enforcement order was issued. He argues that the filing of the suit in superior court deprived the administrative court of jurisdiction to enter

13

the enforcement order and thus the enforcement order was void. However, he offers no legal authority for this argument and his argument is forfeited. (See *In re S.C., supra*, 138 Cal.App.4th at p. 408 ["To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error"].)

In sum, Meyer has not stated a cause of action for inverse condemnation and has not identified any reasonable possibility this defect can be cured by amendment.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


_____/s/_____
EARL, P. J.


We concur:


_____/s/_____
DUARTE, J.


_____/s/_____
WISEMAN, J.*

_____

\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.