[No. B177260. Second Dist., Div. Eight. Dec. 2, 2005.]

MARY BUTLER et al., Plaintiffs and Appellants, v.
CITY OF PALOS VERDES ESTATES et al., Defendants and Appellants.

COUNSEL

Law Offices of Acciani & Acciani, Robert D. Acciani and Dorothy E. Acciani for Plaintiffs and Appellants.

Kutak Rock, Edwin J. Richards, Paul F. Donsbach, Andrew G. Davis and Jennifer L. Andrews for Defendants and Appellants.

Cochran, Davis & Associates, Joan E. Cochran, Margret G. Parke and Aya J. Pearson for Friends of the Peacocks as Amicus Curiae on behalf of Defendants and Appellants.

OPINION

BOLAND, J.—

## SUMMARY

A municipality maintained a program to manage the size of a feral peafowl population that inhabited parklands and canyon property owned by the municipality. Residents who opposed the presence of peafowl in the municipality sought to enjoin the peafowl management program, which permitted a minimum peafowl population, on the ground that the program violated restrictions in deeds by which the municipality obtained title to the parkland

and canyon property. The trial court granted the relief and enjoined the municipality from allowing peafowl to use the parklands and canyons.

We conclude that because the peafowl which inhabit the parklands and canyons are feral rather than domesticated creatures, they are not instrumentalities of the municipality. As a result, the peafowl management program does not violate the deed restrictions under which title to the parklands and canyons was taken.

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute concerns the presence of peafowl in the City of Palos Verdes Estates (City). Peafowl are not indigenous to the Americas. Decades ago, a mayor of the City brought six or eight peafowl to his home located in the Espinosa Circle area and maintained them in a pen behind his home. After the mayor's death, his family released the peafowl into the wild in 1965. Since that time, the proliferation of free-roaming feral peafowl has precipitated serious differences of opinion among property owners in the City. Some residents view the peafowl as a nuisance without parallel, while others view them as a desirable part of the City's distinctive rural heritage.

In response to complaints from residents, the City developed a plan to trap and remove some of the feral peafowl. Fearing the peafowl would be decimated under the plan, the Friends of the Peacocks sued the City. In the wake of that lawsuit, the City in early 1986 adopted a peafowl management program, following which the Friends of the Peacocks dismissed their lawsuit.

Under the peafowl management program, the City conducts a periodic census of the peafowl population in two parkland areas—Espinosa Circle and Malaga Cove—historically inhabited by the peafowl. The program requires that the City maintain a minimum flock of 21 birds in each of the two areas. Peafowl in excess of that number may be trapped and relocated outside the City. After the peafowl are trapped, the City keeps them in a holding pen until they can be relocated. Under the program, the City conducted major trapping programs in 1986, 1993–1994, and 2001, and trapped at least 50 peafowl in 2001.

After the City's 2001 trapping program, residents' complaints concerning the peafowl continued, and one peafowl antagonist removed four or five additional birds on her own. According to the City manager, several peafowl had been poisoned and killed; the City was "getting perilously close to the minimum number" of birds; and peafowl lovers were threatening to import peafowl to maintain the minimum number. As a consequence, on July 10, 2001 the City Council unanimously enacted an ordinance making it a misdemeanor for anyone, other than a City employee, to trap or transport peafowl in the City.

In April 2002, Mary Butler and other peafowl opponents (collectively, Butler) filed this lawsuit against the City and various City officials, including the mayor, several council members, the City manager and the police chief. Butler's complaint alleged causes of action for inverse condemnation, public and private nuisance, trespass, negligence, intentional infliction of emotional distress, and declaratory and injunctive relief. Among other things, Butler alleged the ordinance prohibiting the trapping of peafowl was invalid. Butler further alleged the City's conduct in allowing "a nonindigenous feral peafowl population to proliferate on and over city owned lots made up of parkland, canyons and other inaccessible areas in the Espinosa Circle and Malaga Cove areas" violated protective restrictions in the deeds by which the City obtained title to its lands. Specifically, the City was alleged to have violated this deed restriction: "No cattle, hogs, or other animals, rabbits or poultry, may be kept in any part of said property unless written permission be obtained from the Homes Association, which permission shall be granted and shall be revocable at the pleasure of said Association, under uniform regulations."

The City demurred to Butler's complaint. The trial court (Commissioner Bruce E. Mitchell, hearing the matter by stipulation) sustained the demurrer, without leave to amend, as to the causes of action for inverse condemnation, nuisance, trespass, negligence and emotional distress. In its ruling, the court found no legal basis existed for those causes of action because feral peafowl are not instrumentalities of the City. However, the City's demurrer to the causes of action for declaratory and injunctive relief was overruled. Because the matter was no longer an inverse condemnation case, it was transferred to an appropriate civil trial department (Judge Jane L. Johnson) for further proceedings.[1]

A bench trial was conducted on Butler's cause of action seeking an injunction against the City based on its violation of the deed restrictions on the use of land, namely, the prohibition against keeping "other animals" on its property without approval of the homes association.[2] The trial court found that the deed restrictions were applicable to the City, and that:

—The City did not request permission from the homes association to keep peafowl on its property.

—The peafowl are not wild animals, but rather "domesticated animals living in a feral state, therefore, subject to control, possession and owner-ship." On this point, the court considered and weighed testimony from two

---

[1] The trial court also sustained the demurrer, without leave to amend, as to the causes of action for declaratory and injunctive relief against the individual defendants.

[2] The trial court granted the City summary adjudication of Butler's causes of action seeking relief from the ordinance prohibiting the trapping of peafowl. The court found the ordinance was a valid exercise of the City's police powers. That ruling is not contested.

experts, and found the testimony of Butler's expert, Dr. Francine Bradley, "more credible." The court observed: "Finally, and important to the classification of the peafowl as a domesticated animal, Dr. Bradley testified that once an animal has been domesticated, neither it nor any of its offspring can ever be considered wild again. This fact contradicted defendant's expert, Mr. Homrighausen, who stated that once a domesticated animal returned to a wild state it became wild once again and forevermore."

—The deed restriction reflects a desire to prohibit livestock or domestic-type animals. Peafowl, the court found, "are 'game birds,' and fall into the larger category of livestock, that is, animals kept or maintained by an owner for any variety of purposes, but most often kept for ornamental purposes, and are within the category of 'or other animals'." The court further observed that the peafowl were present on city property solely for aesthetic reasons (an ornamental purpose), and "[a]s such, the peafowl are a prohibited animal contemplated by the [deed restrictions]."

—The City is "keeping" peafowl on its property. This finding was based upon Dr. Bradley's testimony that two means were available to "keep" domesticated fowl. One means is to control their movements or keep them in a confined state. The other means is by "ranging" them. The court summarized the ranging means of "keep[ing]" a flock of domesticated fowl as including: "counting the size of the flock, trapping members of the flock, culling or removing specific members of the flock, monitoring the health of the flock by random testing, re-populating the flock, allowing the flock to derive nutrition from whatever source it can find, providing a suitable environment for the flock to reproduce, providing areas or places to roost, and removing any interference with the numbers or control of the flock." The court found that the City "is engaged in all of the foregoing means of 'ranging,'" and further had enacted an ordinance "preventing citizens from interfering with the ranging peafowl." Consequently, the City was "keeping" peafowl on its property in violation of the deed restrictions.

The trial court thereupon permanently restrained and enjoined the City from, among other things, "allowing peafowl to use . . . city-owned or city-controlled property to nest, lay eggs, roost, feed, remain or wander about that property for any other purpose," and "allowing or permitting the peafowl to wander freely and unrestrained upon and over any city-owned or city-controlled property, including but not limited to parks, parklands, canyons or other public areas . . . ."

The trial court entered a minute order stating its ruling on May 12, 2003. Two weeks later, the Board of Directors of the Palos Verdes Homes Association adopted resolution No. 151. The resolution stated that:

—The deed restrictions authorize the homes association to grant permission to any property owner to keep animals, rabbits or poultry.

—The trial court construed the deed restrictions without the benefit of the homes association's interpretation of the restrictions, which interpretation is, under article VI, section 12 of the restrictions, "final and conclusive upon all interested parties."[3]

—Peafowl have been an integral part of the community and its history and culture for the past 80 years.

—The Board therefore resolved that: "[N]otwithstanding the opinion of the Association that the City's Peafowl Management Program is not 'keeping' animals without written permission of the Association in that peafowl are wild animals, the Association hereby grants written permission to the City to keep peafowl on its property in accordance with its written guidelines denominated as the Peafowl Management Program adopted by the City pursuant to court settlement in 1988 . . . ."

After the trial court issued its statement of decision and entered judgment, the City moved for a new trial. The court granted the motion and conducted a bench trial as to whether the City received valid written permission from the homes association, by virtue of resolution No. 151, to keep peafowl on City property under the peafowl management program. The court found the board lacked authority to pass resolution No. 151 because it did not act "under uniform regulations" as required in the deed restrictions. The basis for this finding was that resolution No. 151 does not apply to all owners of land subject to the deed restrictions, but rather "grants the permission to only one land owner, the City, and not to the other owners of land subject to the [deed restrictions]." Therefore, "no legally permissible permission" was given to the City.

Judgment was entered on July 12, 2004. The City filed a timely appeal, and Butler cross-appealed from Commissioner Mitchell's ruling sustaining the City's demurrer to the causes of action for inverse condemnation, nuisance, trespass, negligence and emotional distress.

---

[3] Article VI, section 11, provides in part that "Palos Verdes Homes Association shall interpret and/or enforce any or all restrictions, conditions, covenants, reservations, liens, charges and agreements herein or at any time created for the benefit of the said property . . . . In case of uncertainty as to meaning of said provisions or of any provisions of this declaration, the Homes Association shall . . . in all cases interpret the same and such interpretation shall be final and conclusive upon all interested parties."

## DISCUSSION

A. *The City's appeal.*

■ We conclude the trial court erred as a matter of law in determining that the deed restrictions operated to prevent the City from continuing to conduct its nearly 20-year-old peafowl management program. Two points, particularly in combination, compel reversal. One is deference to the elected bodies that together govern Palos Verdes Estates—the elected city officials and the elected board of the homes association. The former initiated the peafowl management program years ago, as a compromise between residents of opposing views, and the latter endorses that program. Of course, the inability to defer to elected bodies that operate in violation of legal restrictions brings us to the second and more important point. The deed restriction at issue is a matter of contract, and words of a contract are to be understood in their ordinary and popular sense. (Civ. Code, § 1644; see also Code Civ. Proc., § 1861.) The trial court eschewed the "ordinary and popular sense" of the words. Instead it relied upon expert testimony to reach the conclusion that the City is "keeping" peafowl on its property, within the meaning of the deed restrictions, by "ranging" them. In relying on the technical rather than the usual sense of "keeping" animals or birds, the court erred, and its error is manifest on a number of bases.

■ First, we do not doubt Bradley's opinion that it is possible to keep a flock of domesticated fowl by "ranging" them, as Bradley described, just as cattle ranchers range cattle and free-range chicken farmers range chickens. However, persons who range livestock—whether cattle, chickens or peacocks—at least purport to own or possess the livestock they are ranging. The City neither owns nor possesses the Palos Verdes Estates peafowl, whose ancestors were released into the wild decades ago by private parties.

Second, the Palos Verdes Estates peafowl are not, in any ordinary and popular sense of the word, the "domesticated fowl" that Bradley testified can be "kept" by ranging. The peafowl are indisputably feral creatures, as Butler expressly alleges in her complaint. While the definitions of "feral" are numerous, no definition suggests that the term "feral" may be applied to a domesticated creature. To the contrary, "feral" means "being, characteristic of, or suggesting an animal in the state of nature," or "existing in a state of nature: not domesticated or cultivated," or "having escaped from domestication and become wild." (Webster's 3d New Internat. Dict. (1981) p. 838.) In short, while the peafowl originally brought to Palos Verdes Estates may have been domesticated, their progeny are not. "Domesticate" means: "to adapt (an animal or plant) to life in intimate association with and to the advantage of man or another species usu. by modifying growth and traits through provision

of food, protection from enemies, and selective breeding during generations of living in association and often to the extent that the domesticated form loses the ability to survive in nature . . . ." (Webster's 3d New Internat. Dict., *supra*, p. 671.) The Palos Verdes Estates peafowl are not provided with food, are not protected from their enemies, and are not selectively bred—by the City or by anyone else. Nonetheless, in the face of these commonly understood meanings of "feral" and "domesticated," the trial court relied on Bradley's testimony that "once an animal has been domesticated, neither it or any of its offspring can ever be considered wild again."[4] While this view may be correct, in a technical, scientific sense (although the City's expert testified to the contrary), a court construing contractual restrictions is obliged to use words in their ordinarily understood sense. In other words, the question is not how feral peafowl are classified by the scientific community; it is whether the City is keeping domesticated peafowl on its property in violation of deed restrictions. Certainly, peafowl may be domesticated; indeed, in the trial court's words, peafowl may be "subject to control, possession and ownership." The point, however, is that the peafowl inhabiting Palos Verdes Estates have not been domesticated or subjected to the City's "control, possession and ownership" in the usual, ordinary or generally accepted sense of those terms. (See Civ. Code, § 1644; Code Civ. Proc., § 1861.)

■ Third, while the trial court refused to treat the City differently from any other property owner in Palos Verdes Estates, the City is different. It is imbued with the police power and with its concomitant responsibilities. The City "controls" the peafowl population by counting them; trapping and removing peafowl to keep the population at the minimums set for the two areas historically inhabited by the peafowl; and occasionally testing the peafowl for disease. It does not feed, protect or facilitate the reproduction of the peafowl; it simply owns the parklands and canyons they inhabit. The exercise of the City's animal control powers is no different in kind from its obligation to issue dog licenses, remove a rabid dog, or attend to other problems presented by the wild or domestic animal population. To conclude

---

[4] Butler points to Bradley's testimony that neither the Department of Fish and Game nor the Department of Agriculture considers peafowl as wildlife, and also observes that the Fish and Game Code defines "wild animal" as "any animal of the class Aves (birds) . . . which is not normally domesticated in this state as determined by the commission." (Fish & G. Code, § 2116 [defining the term "wild animal" as used in the code's chapter on the importation, transportation, and sheltering of restricted live wild animals].) However, whether peafowl are regulated by the Department of Fish and Game, or precisely how they are classified, is immaterial to the question whether the City is "keeping" them on its property. Moreover, the Fish and Game Code also defines "wildlife," as used in the code's chapter on conservation of wildlife resources, to mean "birds, mammals, and reptiles not raised in captivity" (Fish & G. Code, § 1800), and the Palos Verdes Estate peafowl clearly were not "raised in captivity." Again, we do not doubt that the deed restrictions would prevent a property owner in Palos Verdes Estates from raising peafowl on his or her property. That, however, is not what the City is doing.

the City is keeping peafowl in violation of the deed restrictions defies common sense. It is common sense—in this case, interpreting words in their usual and ordinary sense—that must govern the interpretation of deed restrictions. Indeed, the irony of Butler's position that the City is "keeping" peafowl on its property by virtue of the peafowl management program is manifest: if the City did not count, trap and remove peafowl to keep the population at the minimum number, the anti-peafowl residents would be compelled to contend with a larger problem than the one with which they are presently faced.[5]

■ Fourth, even if the City's conduct could be construed as "keeping" peafowl, in resolution No. 151 the homes association granted written permission to the City to keep peafowl. The trial court also erred in concluding that the association did not grant permission under "uniform regulations" because resolution No. 151 "grants the permission to only one land owner, the City, and not to the other owners of land . . . ." It overlooks the differences between the City as a public entity and the other private property owners. The requirement to grant or revoke permission "under uniform regulations" does not mean that property owners not similarly situated must nevertheless be treated identically. (See *In re Weisberg* (1932) 215 Cal. 624, 629 [12 P.2d 446] ["[a] law is general and uniform and affords equal protection in its operation when it applies equally to all persons embraced within the class to which it is addressed, provided that such class is founded upon some natural or intrinsic or constitutional distinction between the persons composing it and others not embraced in it"].) Moreover, because no other property owner sought permission to keep peafowl on its property, it is all the more difficult to see any uniformity flaw in the fact that the homes association, as the trial court stated, "grants the permission to only one land owner, the City, and not to the other owners . . . ."

■ In sum, the words of the Palos Verdes Estates deed restrictions, like those of other contracts, must be understood in their ordinary and popular sense. (Civ. Code, § 1644; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 745, pp. 833–834 [citing cases]; see also Code Civ. Proc., § 1861 ["terms of a writing are presumed to have been used in their primary and general acceptation"].) The restriction stating that "[n]o cattle, hogs, or other animals, rabbits or poultry, may be kept" on one's property, construed in its ordinary and popular sense, means that the City, like any other property owner, may not raise peafowl on its property. The restriction cannot be understood to mean that the City may not count, trap and remove feral peafowl and otherwise act in accordance with its peafowl management

---

[5] This opinion does not address the City's contention that its legitimate exercise of police powers overrides the deed restriction. We conclude only that the City is not keeping peafowl on its property within the meaning of the restriction.

program. The program is endorsed by the elected homes association, whose interpretation of "any and all" deed restrictions is described in the declaration of those restrictions as "final and conclusive."[6] The trial court erred in concluding otherwise.

### B. *Butler's cross-appeal.*

In her cross-appeal, Butler argues that the trial court should have overruled, rather than sustained, the City's demurrer to her causes of action for inverse condemnation, trespass, nuisance, negligence, and emotional distress. Butler contends the court erred in concluding the peafowl were not instrumentalities of the City, and asserts the question is one of fact, not of law, and cannot be decided on demurrer. We disagree. The court clearly and correctly concluded that, based on the facts alleged in the complaint, the peafowl were not instrumentalities of the City as a matter of law.

First, Butler's complaint repeatedly alleged that the City "maintained, controlled and protected feral peafowl . . . ." As discussed in connection with the City's appeal, "feral" means "being, characteristic of, or suggesting an animal in the state of nature," or "existing in a state of nature: not domesticated or cultivated," or "having escaped from domestication and become wild." (Webster's 3d New Internat. Dict., *supra*, at p. 838.)

■ Second, case precedents are clear that the state does not own wild animals, and does not control wild animals that have not been reduced to possession. (*Moerman v. State of California* (1993) 17 Cal.App.4th 452, 457 [21 Cal.Rptr.2d 329].) In *Moerman*, the court found "the tule elk are not instrumentalities of the state nor controlled by the state . . . ." (*Id.* at p. 455.) This was so even though the state had relocated the elk by capturing and releasing them; monitored their movements through ear tags and radio collars; attempted to move them off private property when a property owner complained; and prepared a plan anticipating management of the elk through "continued monitoring, habitat improvement carried out in cooperation with landowners, sport hunting, and relocation of elk if necessary." (*Id.* at p. 458.) The court concluded that "[n]othing in this plan nor in the remainder of the record shows the state controls the elk." (*Ibid.*; see also *Christy v. Hodel* (9th Cir. 1988) 857 F.2d 1324, 1334–1335 [citing numerous cases that have considered and rejected the argument that destruction of private property by protected wildlife constitutes a governmental taking; federal government does not own the wild animals it protects, "nor does the government control the conduct of such animals"]; *Douglas v. Seacoast Products, Inc.* (1977) 431

---

[6] Our conclusion makes it unnecessary to address the City's contentions that the homes association is an indispensable party to this litigation and that the injunction entered by the trial court is vague and unenforceable.

U.S. 265, 284 [52 L.Ed.2d 304, 97 S.Ct. 1740] ["it is pure fantasy to talk of 'owning' wild fish, birds, or animals. Neither the States nor the Federal Government, any more than a hopeful fisherman or hunter, has title to these creatures until they are reduced to possession by skillful capture"].)

Butler complains of the trial court's "misguided focus on the word 'feral,' " and contends that the "finding that 'feral' means 'wild,' as in 'wild animal' . . . is error." Nothing is misguided in the trial court's analysis. In fact, "feral" does mean "wild," as any dictionary will confirm. Moreover, for the purposes of determining whether a creature is an instrumentality of the government, no meaningful distinction may be drawn between a "wild" animal that cannot be domesticated and a "feral" animal that has "escaped from domestication and become wild . . . ." (Webster's 3d New Internat. Dict., *supra*, at p. 838.) Neither may be considered an instrumentality of the state unless reduced to possession. Accordingly, the trial court did not err in concluding, based on the facts alleged in Butler's complaint, that the peafowl were not instrumentalities of the City as a matter of law.

## DISPOSITION

The judgment is reversed. The City is to recover its costs on appeal.

Rubin, Acting P. J., and Flier, J., concurred.

The petition of plaintiffs and appellants for review by the Supreme Court was denied March 15, 2006, S140949. George, C. J., did not participate therein.