Filed 2/9/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITIZENS FOR ODOR NUISANCE ABATEMENT, | D068086 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00080906) |
| CITY OF SAN DIEGO et al. | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge. Affirmed.

Blumenthal, Nordrehaug & Bhowmik, Norman B. Blumenthal and Kyle R. Nordrehaug for Plaintiff and Appellant.

Jan I. Goldsmith and Mara W. Elliott, City Attorneys, and Glen T. Spitzer, Deputy City Attorney, for Defendants and Respondents.

Citizens for Odor Nuisance Abatement (CONA) appeals the trial court's entry of judgment in favor of the City of San Diego and Todd Gloria, in his capacity as former interim mayor of San Diego (collectively, the City) following the court's grant of summary judgment in the City's favor on CONA's First Amended Complaint (FAC).

CONA sued the City in 2013 for an alleged public nuisance caused by noxious sea lion waste odors permeating the picturesque La Jolla Cove. The trial court granted the City's motion for summary judgment, finding: (1) the City did not have a duty to prevent harms caused by wild animals; (2) there was no triable issue that the City's conduct caused the alleged nuisance; and (3) Civil Code section 3482 barred nuisance liability.[1] CONA challenges these rulings on appeal and argues the City cannot avail itself of immunity under Government Code section 831.2.[2]

We affirm the judgment. As the trial court found, there is no triable issue as to causation, an essential element of the public nuisance theory at the heart of all of CONA's causes of action. To the extent CONA's mandamus cause of action rests on an independent duty arising from documents issued by the former mayor, we likewise find no triable issue those documents gave rise to a legal duty for the City to act.

FACTUAL AND PROCEDURAL BACKGROUND

In recent years, local residents and business owners near La Jolla Cove have complained of foul and noxious animal waste odors, describing the area as "a place that is

---

[1] Civil Code section 3482 provides, "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance." The trial court found this provision barred a nuisance action because sea lions and cormorants were protected and maintained under the Marine Mammal Protection Act (MMPA, 16 U.S.C. § 1361 et seq.) and the Migratory Bird Treaty Act (MBTA, 16 U.S.C. §§ 703-712).

[2] Government Code section 831.2 provides, "[n]either a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or breach." The trial court did not reach the City's argument this provision rendered it immune from liability for the alleged odor nuisance caused by sea lion waste.

beautiful but stinks." Former San Diego Mayor Bob Filner issued an emergency finding in May 2013 declaring bird odors from "cormorants, gulls, pigeons and pelicans" a public health hazard requiring remediation. The City contracted with the Blue Eagle Company to apply a microbial cleaner to treat the guano (bird excrement). These efforts proved largely successful in eliminating guano odors but were less successful at addressing sea lion waste odors. The sea lion population at La Jolla Cove has grown exponentially in recent years, resulting in significant waste buildup on the bluffs. This buildup has affected local residents and business owners, who complain of noxious odors affecting their businesses and property values.

In December 2013, CONA, a nonprofit citizen's group, sued the City and the State of California for "the foul, noxious and sickening odors emanating from the excrement of cormorants and sea lions deposited on the rocks adjacent to the La Jolla Cove."[3] CONA alleged the City caused the odors by constructing a fence that denied human access to the rocks adjacent to the Cove, thereby encouraging sea lion and cormorant habitation.[4] The operative FAC, filed in January 2014, alleged the City installed a gate in late 2013 to facilitate public access but that this did not solve the problem. CONA acknowledged the City had adequately treated cormorant guano odors but alleged it had not adequately addressed sea lion waste odors.

---

[3]    CONA voluntarily dismissed all claims against the State of California without prejudice on January 17, 2014.

[4]    The fence at issue lies between 1100 and 1325 Coast Boulevard in La Jolla, California.

CONA brought four causes of action, all resting on a public nuisance theory. First, CONA sought an order to show cause as to why the foul odor should not be ordered abated as a public nuisance. Second, CONA sought injunctive relief to prevent irreparable harm from the nuisance. Third, CONA sought declaratory relief that the City violated California law by failing to abate the odor nuisance. Fourth, CONA sought a writ of mandate directing the City to comply with California law by remedying the odor nuisance.

In June 2014, the City moved for judgment on the pleadings, arguing it was immune under Government Code section 831.2. The court denied the motion, crediting CONA's argument the waste was not a "natural condition" of "unimproved public property" due to the City's construction of the fence. The court acknowledged further evidence might disprove CONA's causation theory but declined to grant judgment on the pleadings.

In January 2015, the City moved for summary judgment or, in the alternative, summary adjudication, arguing there was no triable issue as to: (1) whether the City owed a duty to control wild animals; (2) whether the City's conduct was a substantial factor in causing the alleged nuisance; (3) whether the City was immune under Government Code section 831.2; (4) whether the nuisance claim was barred by Civil Code section 3482; and (5) whether the seriousness of the harm outweighed the social utility of the condition. In support of its motion, the City offered an expert declaration from marine ecologist Keith Merkel, who concluded the exponential sea lion growth at La Jolla Cove was due to natural population dynamics, not the fence atop the bluffs. The

4

City also offered declarations from longtime lifeguards and City employees indicating the area had been completely fenced since 1971, whereas sea lions began to congregate around 2008.

CONA filed its opposition in March 2015, offering into evidence declarations from local residents and business owners who claimed the odors emerged after the fence was installed. CONA also offered into evidence a press release and a memorandum by former San Diego mayor Bob Filner expressing a need to remedy guano odors at La Jolla Cove (2013 Filner Memorandum and Press Release). Finally, CONA offered a declaration from its expert, behavior consultant David Butcher, who did not recall a fence or sea lions in the area in the 1960's and claimed a fence erected sometime in the 1990's caused sea lions to be more comfortable gathering on the bluffs.

The City filed several evidentiary objections to CONA's evidence. On March 26, 2015, the court sustained the City's objections to the 2013 Filner Memorandum and Press Release, excluding those documents on grounds of relevancy and scope (Evid. Code, §§ 350, 355) because they related to bird guano, not sea lion waste. The court sustained most of the City's objections to the Butcher declaration, excluding Butcher's statements that: (1) the fence was built in the 1990's; (2) the fence allowed sea lions to frequent La Jolla Cove; (3) the fence allowed the sea lion population to grow unchecked; (4) the fence prevented coastal access, directly leading to uncontrolled sea lion habitation; (5) the odor would worsen as the sea lion population grew unchecked; (6) the fence caused the sea lions to make the rocks their home; and (7) a gate installed in 2013 exacerbated

5

the problem.  The court denied the City's evidentiary objections as to declarations submitted by La Jolla locals.

Both parties filed requests for judicial notice.  By order dated March 27, 2015, the court granted the City's request to judicially notice sea lions and cormorants as wild animals, ruling this was common knowledge.  The court also granted the City's request for judicial notice of the FAC.  The court denied CONA's requests for judicial notice of *Milligan v. City of Laguna Beach* (1983) 34 Cal.3d 829 and 16 U.S. Code section 1379 as superfluous.

Turning to the merits, the court concluded the City met its burden on summary judgment, while CONA failed to carry its burden.  Citing *Butler v. City of Palos Verdes Estates* (2005) 135 Cal.App.4th 174 (*Butler*) and *Moerman v. State of California* (1993) 17 Cal.App.4th 452 (*Moerman*), the court ruled the City did not, as a matter of law, have a duty to control an alleged nuisance caused by wild animals.  Next, while noting causation was typically a jury question, the court found no legitimate factual dispute as to whether the City's actions caused the alleged nuisance.  It found the City met its initial burden on summary judgment, given Merkel's testimony that normal sea lion population dynamics, expected sea lion behavior, and favorable environmental conditions at La Jolla Cove, rather than the fence, caused the explosive sea lion population growth.  (Code Civ. Proc., § 437c, subd. (p)(2).)[5]

---

[5]     Further statutory references are to the Code of Civil Procedure unless otherwise specified.

6

With the burden shifted to CONA (§ 437c, subd. (p)(2)), the court determined CONA failed to carry its burden to show a triable issue of material fact on causation. The court concluded the Butcher declaration held "no evidentiary value" because it offered the "naked opinion that the fence caused the sea lion explosion" without considering the effect of federal regulations, population trends, sea lion behavior, food sources, or geographical reasons for the population increase at La Jolla Cove. The court found Butcher merely speculated that without the fence, human presence would have prevented sea lion congregation, "a classic *post hoc, ergo propter hoc* logical fallacy" that mistook temporal sequence for causal connection. The court noted that although Butcher claimed to be an expert in " 'psychology and behavior modification principles,' " he did not claim to be an expert in *sea lion* behavior. The court also found CONA's causation theory was *contradicted* by Butcher's statement that reintroduction of public access to the bluffs once the gate was installed " 'made the sea lions more acclimated to humans and thus more likely to keep calling the rocks their home.' " Thus, the court found CONA failed to supply admissible evidence to show the existence of a triable issue on causation.

Next, the court addressed the City's argument CONA's nuisance action was barred under Civil Code section 3482. Noting the MMPA and MBTA protected sea lions and cormorants and prohibited their "taking,"[6] the court concluded the conditions of sea lions

---

[6]     The MMPA proscribes taking any marine mammal (16 U.S.C. § 1372(a)(1).) The term "take" includes harassment and attempted harassment. (16 U.S.C. § 1362(13).) "Harassment," in turn, includes "any act of pursuit, torment, or annoyance" that "has the potential to disturb a marine mammal or marine mammal stock in the wild by causing

7

and cormorants could not constitute a nuisance under Civil Code section 3482. CONA pointed to the MMPA's exemption provision (16 U.S.C. § 1379(h)(1)) as indication the MMPA allowed the City to address health hazards caused by marine mammals.[7] CONA also pointed to the 2013 Filner Memorandum and Press Release as evidence the City could avail itself of the MMPA's exemption provision to abate the odors. The court rejected CONA's argument, finding the 2013 Filner documents pertained to the removal of bird guano, not sea lion waste, and concluding CONA could not compel the City to exercise its discretion under the MMPA in a particular manner. Thus, the court concluded CONA's action was barred by Civil Code section 3482.

Finding no triable issue on duty or causation and concluding the nuisance claim was statutorily barred, the court granted the City's motion for summary judgment. The court empathized with local residents and business owners but suggested the odor problem was better addressed through the political process than through the courts. On April 5, 2015, the court entered judgment for the City and dismissed the FAC with prejudice.

CONA timely appealed.

---

disruption of behavioral patterns, including, but not limited to, migration, breathing, nursing, breeding, feeding, or sheltering." (16 U.S.C. § 1362(18)(A)(ii).)

7      Section 1379, subdivision (h)(1), of title 16 of the United States Code allows "a Federal, State, or local government official or employee" to take "a marine mammal in a humane manner (including euthanasia) if such taking is for . . . [¶] . . . [¶] (B) the protection of the public health and welfare, or [¶] (C) the nonlethal removal of nuisance animals."

DISCUSSION

I.

STANDARD OF REVIEW

The purpose of summary judgment is to "cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) Summary judgment is properly granted if the record demonstrates there is no triable issue of material fact such that the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).)

A defendant moving for summary judgment bears the burden of persuasion to show there is no triable issue of material fact. (*Aguilar, supra,* 25 Cal.4th at p. 850.) To meet that burden, a defendant need only show the plaintiff cannot establish an essential element of a cause of action. (*Id.* at pp. 853-854; § 437c, subd. (p)(2).) Once the defendant meets that burden, the burden shifts to the plaintiff to show a triable issue of one or more material facts exists as to that cause of action. (§ 437c, subd. (p)(2); *Aguilar,* at p. 849.) A plaintiff "may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." (§ 437c, subd. (p)(2); *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477 (*Merrill*).)

In ruling on the motion, the trial court must view the evidence and all inferences reasonably drawn therefrom in the light most favorable to the party opposing summary judgment. (*Aguilar, supra,* 25 Cal.4th at p. 843.) A triable issue of material fact exists

9

"if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850, fn. omitted.) Although the trial court does not try the case, weigh the evidence, or weigh conflicting inferences, it does consider the competency of the evidence presented. (*Id.* at p. 856; *Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 525-526.) Thus, a party "cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact." (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981 (*LaChapelle*).)

On appeal, we review the trial court's decision to grant summary judgment de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the trial court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill, supra,* 26 Cal.4th at p. 476.) We apply the traditional three-step analysis to "(1) identify the pleaded issues, (2) determine if the defense has negated an element of the plaintiff's case or established a complete defense, and if and only if so, (3) determine if the plaintiff has raised a triable issue of fact." (*Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175.) A trial court's stated reasons for granting summary judgment do not bind us; we review the court's ruling, not its rationale. (*Continental Ins. Co. v. Columbus Line, Inc*. (2003) 107 Cal.App.4th 1190, 1196.) We review the trial court's evidentiary rulings for abuse of discretion. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694; *Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1427.)

II.

PUBLIC NUISANCE

The FAC alleges noxious sea lion waste odors at La Jolla Cove constituted a public nuisance. Public nuisance and private nuisance "have almost nothing in common except the word 'nuisance' itself." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1103 (*Acuna*).) Whereas private nuisance is designed to vindicate individual land ownership interests, the public nuisance doctrine has historically distinct origins and aims at "the protection and redress of *community* interests." (*Ibid.*) With its roots tracing to the beginning of the 16th century as a criminal offense against the Crown, public nuisances at common law are "offenses against, or interferences with, the exercise of *rights common to the public,*" such as public health, safety, peace, comfort, or convenience. (*Id.* at pp. 1103-1104.) To qualify as a public nuisance, the interference must be both substantial and objectively unreasonable. (*Id.* at p. 1105.)

The early common law categories of nuisance were codified in California in 1872 and remain applicable today. (*Acuna, supra,* 14 Cal.4th at p. 1104.) "Anything which is injurious to health . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property" is a nuisance. (Civ. Code, § 3479.) A "public nuisance" is "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be

11

unequal." (Civ. Code, § 3480.) "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." (Civ. Code, § 3482.)[8]

Causation is an essential element of a public nuisance claim. A plaintiff must establish a "connecting element" or a "causative link" between the defendant's conduct and the threatened harm. (*In re Firearm Cases* (2005) 126 Cal.App.4th 959, 988; see CACI No. 2020.) "Public nuisance liability 'does not hinge on whether the defendant owns, possesses or controls the property, nor on whether he is in a position to abate the nuisance; the critical question is *whether the defendant created or assisted in the creation of the nuisance*.' " (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 542, italics added; see *Wade v. Campbell* (1962) 200 Cal.App.2d 54, 59 [animal odors "created by the manner in which defendants operated their dairy" constituted a public nuisance].) Causation may consist of either "(a) an act; or [¶] (b) a failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate the interference with the public interest or the invasion of the public interest." (Rest.2d.Torts, § 824; see *Birke v. Oakwood Worldwide* (2009) 169 Cal.App.4th 1540,

---

8    Relying on this statute, the City argues, and the trial court found, that because sea lions are regulated under the MMPA, their odors could not be deemed a nuisance. However, to avoid nuisance liability, the specific action causing the nuisance must be unequivocally authorized by statute. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 292 [statutory authority to operate a sewage treatment plant did not authorize production of noxious odors]; *Greater Westchester Homeowners Assn. v. City of Los Angeles* (1979) 26 Cal.3d 86, 101 [governmental approval of aviation did not imply approval of noise].) Thus, the mere fact Congress has spoken on the subject of sea lions by enacting the MMPA does not imply authorization for noxious odors emanating from sea lion waste buildup. Nevertheless, because we decide the appeal on other grounds, we do not reach the City's arguments under Civil Code section 3482.

1552 (*Birke*) [same].) A plaintiff must show the defendant's conduct was a "substantial factor" in causing the alleged harm. (*Birke,* at p. 1548; CACI No. 2020.)[9]

Briefly, we address the City's suggestion it could never be liable for harm caused by wild animals. The City cites *Butler, supra,* 135 Cal.App.4th 174, in which city residents claimed feral peafowl roaming city land constituted a public nuisance. (*Id.* at p. 178.) In affirming the sustaining of the city's demurrer on the nuisance and trespass claims, the court reasoned, "the state does not own wild animals, and does not control wild animals that have not been reduced to possession." (*Id.* at p. 184.) *Butler* did not analyze the required elements of a public nuisance cause of action or explain the link between a state's control over wild animals and the scope of liability for public nuisance. To the extent *Butler* implies a public entity can never be liable for a nuisance linked to wild animals, we disagree. There could be circumstances in which a public entity's actions in connection with wild animals give rise to public nuisance liability, though we do not find those circumstances here.[10]

---

[9] The City argues a public nuisance action requires the existence of a duty *and* causation. To be precise, public nuisance requires *causation—*"either by an affirmative act or by a failure to act on the part of one who was under a duty to act to prevent or abate the nuisance." (Rest.2d.Torts, § 824, com. a.) Duty matters only to the extent a plaintiff's causation theory rests on the defendant's *inaction*. (*Birke, supra,* 169 Cal.App.4th at p. 1552; see *City of Pasadena v. Superior Court* (2014) 228 Cal.App.4th 1228, 1236 [nuisance elements overlap with negligence only where causation rests on defendant's inaction].)

[10] *Butler* relied on *Moerman*, a trespass action. (*Butler, supra,* 135 Cal.App.4th at p. 184.) The plaintiff in *Moerman* alleged the state committed a physical taking by relocating elk that then invaded his land. (*Moerman, supra,* 17 Cal.App.4th at p. 456.) The plaintiff relied on a U.S. Supreme Court case that held a cable operator's installation

We find support in a pair of federal decisions addressing the alleged public nuisance caused by Asian carp, an invasive species of fish, threatening to enter the Chicago waterways. (*Michigan v. United States Army Corps of Eng'rs* (7th Cir. 2011) 667 F.3d 765 (*Michigan I*); *Michigan v. United States Army Corps of Eng'rs* (7th Cir. 2014) 758 F.3d 892 (*Michigan II*).)[11] Five states brought a federal common law public nuisance action against executive agencies operating the manmade waterway, seeking an order requiring the agencies to prevent Asian carp from entering Lake Michigan. (*Michigan I,* at pp. 768, 771; *Michigan II*, at p. 894.) Although the Seventh Circuit concluded the public nuisance claim lacked merit, it rejected the agencies' proffered defense they could not be liable for nuisance because the fish swam of their own volition:

> "[T]he defendants bear responsibility for nuisances caused by their operation of a manmade waterway between the Great Lakes and Mississippi watersheds. That they are not themselves physically moving fish from one body of water to the other does not mean their normal operation of the [waterways] cannot cause a nuisance."

(*Michigan I, supra,* 667 F.3d at p. 771.) The court reiterated this principle in *Michigan II*, stating: "Our decision does not depend on the fact that the Asian carp are advancing

---

on private land pursuant to government authorization was a taking. The *Moerman* court rejected that contention, stating that unlike cable personnel, elk were wild animals that roamed across private and public property and were neither instrumentalities of the state nor subject to state control. (*Id.* at pp. 457, 459.) This negated liability for trespass *as it was pled in Moerman's complaint*. (*Id.* at pp. 459-460.) CONA's causation theory is readily distinguishable, and the language in *Moerman*, relied on in *Butler*, does not apply.

11    Both decisions relied on the Restatement Second of Torts, which California courts also consider. (*Michigan I, supra,* 667 F.3d at p. 771; *Michigan II, supra,* 758 F.3d at pp. 900, 904; *Acuna, supra,* 14 Cal.4th at p. 1104; *In re Firearm Cases, supra,* 126 Cal.App.4th at pp. 987-988.)

upstream of their own volition. It would be enough if the [agencies] maintained the [waterways] in a way that allowed the Asian carp to swim through to Lake Michigan." (*Michigan II, supra*, 758 F.3d at p. 906.)

In short, causation is an essential element of a public nuisance action. That sea lions and cormorants are wild animals is not dispositive of the City's liability. The City could be held liable for the alleged odor nuisance if CONA were to demonstrate the City's conduct was a substantial factor in causing the alleged harm.[12]

CONA claims the City caused the alleged public nuisance by erecting a fence along La Jolla Cove that prevented public access to the rocks, thereby allowing the "uncontrolled habitation" of sea lions and cormorants leading to waste buildup and noxious odors. CONA avers that although the City effectively treated cormorant guano odor, it had not effectively treated sea lion waste odors. On appeal, we evaluate de novo whether there is a triable issue the City's conduct was a substantial factor in causing the alleged odor nuisance.

---

[12] Our causation analysis comports with governmental immunity under the California Tort Claims Act (Gov. Code, § 831.2), which shields public entities from liability for "an injury caused by a natural condition of any unimproved public property." "Absolute immunity is the rule, 'so long as the public entity's conduct does not amount to negligence *in creating or exacerbating* the degree of danger normally associated with a natural condition.' " (*Arroyo v. State of California* (1995) 34 Cal.App.4th 755, 764, some italics omitted [state immune for attack by mountain lion at public park].) Because we conclude there is no triable issue as to causation, we do not address the City's immunity arguments under Government Code section 831.2 or CONA's counterarguments the statute does not apply because the fence rendered the property "improved" and the odors injured nonusers on *adjacent* property.

III.

NO TRIABLE ISSUE AS TO CAUSATION

The trial court properly found there was no triable issue as to causation, an essential element of the public nuisance theory underlying the entire FAC.  The City offered competent evidence the fence was not a substantial factor in the rapid sea lion population growth or resulting waste odors at La Jolla Cove.  With the burden shifted to CONA (§ 437c, subd. (p)(2)), CONA did not show a triable issue as to causation.

The City proffered evidence the fence had been in place for decades, whereas sea lions began congregating in large numbers on the bluffs around 2008.  Christine Travers, an employee at the San Diego Historical Center, submitted a declaration and photographs showing the relevant area had been entirely fenced since at least 1971.  City Attorney Investigator Sally Marie Down submitted a declaration corroborating that the fence was erected in 1971; Down attached city council resolutions from 1978 and 2003 showing the city had repaired portions of the fence in the interim.[13]  Chief Lifeguard Jimmy Canale submitted a declaration stating the fence had been in place since at least 1982, whereas sea lions began gathering in large numbers around 2007.  Lifeguards Erik Jones, Juan Gonzalez, and Brian Zeller likewise recalled sea lions began to congregate on the bluffs

_____

[13]     CONA argues for the first time in its reply brief on appeal it can proffer evidence the fence had completely fallen down before it was reinstalled in 2003.  We limit our review to evidence presented before the trial court.  In any event, Down's declaration and documents submitted thereto show the 2003 repairs replaced *existing* fencing.  CONA's speculation to the contrary does not raise a triable issue of fact.  (*LaChapelle, supra,* 102 Cal.App.4th at p. 981.)

16

around 2008. Together, this evidence casts substantial doubt as to CONA's theory the City's erection of a fence caused sea lions to congregate on the bluffs decades later.

Moreover, the City's ecology expert, Keith Merkel, attributed the exponential sea lion population growth to several factors unrelated to the fence.[14] Merkel stated California Sea Lion numbers had increased significantly since 1975, with rates of growth accelerating in recent years. Merkel explained the regulation of fisheries had significantly reduced sea lion mortality and that greater numbers of sea lions had emigrated from established rookeries as competition for breeding space ensued. Merkel stated La Jolla Cove was a well-suited habitat for sea lions due to its semi-protected waters; availability of market squid, schooling fish, and other favored foods; and close proximity of dry land for resting. Given the physical conditions of La Jolla Cove, Merkel stated a significant population increase at that location was the expected result of overall population growth up and down the coast. Merkel noted sea lion populations had increased throughout the Pacific coast, both in areas of high and low human presence. Merkel also pointed to the evidence above suggesting the fence had remained in the same location and state for decades, with no substantive changes in public use of the marine terrace. Based on these factors, Merkel concluded natural population dynamics, rather than the fence, caused sea lion population growth and the resulting waste odors at La Jolla Cove.

---

[14] On appeal, CONA misquotes the Merkel declaration to contend he *admitted* the fence caused the nuisance. As the City points out, a full reading of the quoted paragraph shows Merkel reached the opposite conclusion.

Thus, the City offered competent evidence there was no triable issue the City caused the odors by erecting a fence that prevented human access to the bluffs. Because the City carried its initial burden, the burden shifted to CONA to show the existence of a triable issue of material fact. (*Aguilar, supra,* 25 Cal.4th at p. 850; § 437c, subd. (p)(2).) As the trial court found, CONA did not meet that burden.

CONA offered declarations from nearly two dozen local business owners, residents, and swimmers describing strong odors at La Jolla Cove. Some declarants recalled a time when there was no fence or odor. For example, George Hauer and Steven Coopersmith declared the sea lions began congregating on the bluffs only after the fence was built, though neither specified when the fence was built. Ian Allen declared there was no fence or odor 25 years ago. Douglas Burleigh stated there was no fence 30 years ago and that the sea lion colony expanded only after it was installed. Richard Walker did not recall sea lion presence when he first started swimming in the area in 1982; he thought the fence was built sometime after 1997 and believed the odors appeared a few years thereafter. Michelle McConica did not believe the fence was there 15 years ago and stated there were few sea lions until after the fence was built. Finally, Melinda Merryweather was not sure when the fence was built but said there was no fence for a long time, and once built, the sea lions took over the bluffs.

At best, this evidence suggests that at one time, perhaps between 15 and 30 years ago, there was no fence and no odor. The evidence does not create a triable issue as to whether the fence *created* the odors by keeping people off the bluffs and encouraging sea lions to congregate. As the trial court found, CONA attempts a classic *post hoc, ergo*

18

*propter hoc* logical fallacy—after the fence, therefore, because of the fence—which does not set forth a causal nexus. (See *Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 394 [no triable issue where plaintiff attempted to establish causation through mere temporal sequence; "[w]ith respect to causation, '[m]ore than *post hoc, ergo propter hoc* must be demonstrated' "].)

CONA also offered the declaration of its expert witness, David Butcher, who offered the unsupported opinion the fence was built in the 1990's and caused the sea lion population explosion at La Jolla Cove. The City objected to the declaration on grounds Butcher lacked qualifications to serve as an expert and had not laid a proper foundation for his conclusions. The court sustained those objections and found Butcher's opinion on causation held "<u>no</u> evidentiary value." CONA does not challenge that evidentiary ruling on appeal. Thus, as the trial court found, CONA failed to offer competent evidence to show a triable issue of material fact as to whether the City's construction of a fence at La Jolla Cove caused the sea lion odor nuisance.[15]

To the extent the FAC could be construed to allege the City's *failure to act* caused the odor nuisance (*Birke, supra,* 169 Cal.App.4th at p. 1552), there is likewise no triable issue as to causation. Even were we to assume the City had a duty to address sea lion

---

[15]    We likewise reject CONA's contention the City's installation of a gate in the fence in late 2013 allowed public access and *exacerbated* the odor problem. The trial court sustained the City's objection to that portion of the Butcher declaration, finding the FAC did not allege that theory, and CONA does not challenge that evidentiary ruling on appeal. Moreover, as the trial court noted, CONA's argument about the gate tends to undermine, rather than support, its theory the fence caused sea lions to congregate by *keeping humans out*.

waste odors,[16] the uncontroverted evidence shows the City did not fail to act. Merkel declared the City was restricted by a matrix of environmental regulations as to what actions it could take; for example, regulations would prevent the City from washing waste off the rocks and into marine waters. Within these boundaries, the City opted to treat the waste odors with a microbial solution. The City hired Merkel in April 2013, months before CONA initiated this lawsuit, to identify and help abate the odors. Acknowledging Blue Eagle's methods had not fully treated sea lion waste odors,[17] Merkel stated the City "continues to seek alternatives, including reduction of the sea lion population at [La Jolla] Cove." Thus, the City proffered competent evidence it had not failed to act to address the sea lion waste odors.

CONA did not present contrary evidence. Instead, it suggested the City should address the problem in one of two ways—either by hiring Butcher's firm at a cost of $48,000 to encourage sea lions to relocate through "behavior modification" and "controlled harassment" techniques or by seeking an exemption under the MMPA to "scoop the poop." (16 U.S.C. § 1379(h).) The fact the City might have considered alternative approaches did not create a triable issue as to whether the City caused the

---

[16]     We do not decide whether the City had such a duty. We note, however, that although it is California policy to "alleviate economic losses or public health or safety problems caused by wildlife to the people of the state" (Fish & G. Code, § 1801), that policy does not give rise to a mandatory duty. (*Arroyo v. State of California, supra,* 34 Cal.App.4th at p. 765.)

[17]     Merkel explained the microbial solution effectively treated odors from older sea lion waste deposits. However, because sea lion waste accumulates rapidly and in high volumes, this method had proven less effective in treating odors from newer deposits.

20

alleged nuisance by *failing to act*. The trial court properly declined to compel the City to use its discretion in a particular manner. (See *Butt v. State of California* (1992) 4 Cal.4th 668, 695 [principles of comity and separation of powers restrain courts' authority to order acts within the discretion of other branches of government]; *Friends of H Street v. City of Sacramento* (1993) 20 Cal.App.4th 152, 166 [declining citizen group's request for injunctive relief to remedy the city's alleged inaction in solving traffic problems].)[18]

Absent a triable issue as to causation, the trial court properly granted the City's motion for summary judgment as to all four causes of action in CONA's FAC. (*In re Firearm Cases, supra,* 126 Cal.App.4th at p. 991 [affirming summary judgment in public nuisance action absent triable issue as to causation].) Although CONA contends the trial court did not address its mandamus cause of action, that too rested on public nuisance; CONA sought mandamus to compel the City to abate the alleged odor nuisance.

## IV.

## NO TRIABLE ISSUE AS TO MANDAMUS CAUSE OF ACTION

At oral argument before the trial court, CONA advanced a slightly different theory than alleged in the FAC as to its mandamus cause of action. CONA argued the 2013 Filner Memorandum created an independent legal obligation for the City to abate the odor nuisance caused by sea lion waste—i.e., by issuing the memorandum, the City

---

[18] CONA argues *Friends of H Street* is distinguishable because Civil Code section 3482 barred the nuisance action in light of the city's statutory authority to regulate traffic. However, the *Friends of H Street also* rejected the public nuisance action on separation of powers grounds, stating, "courts lack power to compel legislative bodies to perform legislative acts in a particular manner." (*Friends of H Street v. City of Sacramento, supra,* 20 Cal.App.4th at pp. 159, 166.)

21

*assumed* the obligation to abate the odor nuisance.  The trial court rejected that argument and sustained the City's evidentiary objections to the 2013 Filner Memorandum and Press Release.  CONA challenges that evidentiary ruling on appeal and argues the documents, properly admitted, support its mandamus cause of action.

We conclude the trial court did not abuse its discretion in sustaining the City's evidentiary objections.  The court reasonably excluded the 2013 Filner documents as irrelevant to *sea lion* waste odors at La Jolla Cove.  For example, the 2013 Filner Memorandum set forth the "Nature of the Emergency" and "Cause of the Emergency" as follows:

> "Over the course of years, cormorants, gulls, pigeons and pelicans have fouled the beach and rock areas surrounding La Jolla Cove such that the stench and odors are constant and are, at times, overwhelming."

The document went on to explain that large populations of *roosting birds* posed a health risk.  The 2013 Filner Press Release was captioned, "Natural Product Expected to Curtail Bird Poop Odor!!!"  The trial court reasonably found that these documents concerned bird guano, not sea lion waste.  Although the 2013 Filner Memorandum acknowledged remedial action to treat the guano could disturb seals (not sea lions), it did not mention *odors* caused by any marine mammals at La Jolla Cove.[19]

---

[19]    As it does on appeal, CONA directed the trial court to general language in the Filner documents calling "animal waste at La Jolla Cove" a public health hazard and announcing remedial action.  Read in context, however, the trial court reasonably concluded these statements referred to the bird guano referenced throughout the 2013 Filner Memorandum and Press Release, not animal waste from *sea lions*, which were nowhere referenced in those documents.

Moreover, even if admitted, the 2013 Filner documents at most reflect the City's *choice* to abate bird guano odors, not any affirmative legal obligation to abate *sea lion* waste odors. "Mandamus will lie to compel a public official to perform an official act required by law. (Code Civ. Proc., § 1085.) Mandamus will not lie to control an exercise of discretion, i.e., to compel an official to exercise that discretion in a particular manner." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442; see *AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 704-705 [mandamus cause of action properly rejected where it sought to compel health agency to take *particular* steps to address spread of disease].) That the City chose to issue emergency findings and abate *bird guano* odor in 2013 does not impose a legal obligation to abate *sea lion* waste odor. Further, although mandamus may issue to compel an official to *exercise* discretion and take some action (if so required by law) (*Common Cause,* at p. 442), the uncontroverted evidence shows the City *has* taken action to address sea lion waste odors at La Jolla Cove and continues to evaluate alternative remedial options. Thus, the 2013 Filner Memorandum and Press Release do not show a triable issue on CONA's mandamus cause of action.[20]

We sympathize with CONA but agree with the trial court that any resolution likely lies in the political sphere. As the Seventh Circuit aptly stated in *Michigan I*, "from an

---

[20] Because we affirm on other grounds, we do not reach CONA's arguments there are triable issues as to whether: (1) the gravity of harm outweighs the social utility of the City's conduct; (2) immunity under section 831.2 of the Government Code applies; and (3) section 3482 of the Civil Code precludes nuisance liability.

institutional perspective[,] courts are comparatively ill situated to solve this type of problem." (*Michigan I, supra,* 667 F.3d at p. 790.)

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

NARES, J.

AARON, J.